## UNITED STATED DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-CV-23182

FLO & EDDIE, INC., a California
corporation, individually and on behalf of
all others similarly situated,

                 Plaintiff,

vs.

SIRIUS XM RADIO, INC., a Delaware
corporation; and DOES 1 through 10,

                 Defendants.

_____/

### PLAINTIFF FLO & EDDIE, INC.'S
### RESPONSE TO SIRIUS XM RADIO'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..........................................2

    A.    The Parties. ...............................................................................................2

        1.    Flo & Eddie (The Turtles)..............................................................2

        2.    Sirius XM.........................................................................................3

    B.    Sirius XM's Reproduction and Distribution of Pre-1972 Recordings.......................4

    C.    Sirius XM's Performance of Pre-1972 Recordings. ..................................5

III.   SIRIUS XM IS LIABLE FOR ITS PERFORMANCE OF PRE-1972 RECORDINGS ......................................................................................................6

    A.    Florida, Not Federal, Law Governs This Case. .........................................6

    B.    Ownership Of The Artistic Performance In A Recording Includes The Right To Exclude All Others From Using That Performance. ...................................7

    C.    Sirius XM Is Liable For Its  Performance of Pre-1972 Recordings. .........................8

        1.    Common Law Copyright Infringement. ......................................8

        2.    Unfair Competition .......................................................................10

        3.    Conversion .....................................................................................13

        4.    Civil Theft.......................................................................................14

IV.    THE COMMERCE CLAUSE IS NOT APPLICABLE .....................................17

V.     SIRIUS XM IS LIABLE FOR ITS REPRODUCTIONS AND DISTRIUBTIONS ..........19

VI.    SIRIUS XM'S CLAIM OF ACQUIESCENCE IS MERITLESS .......................19

VII.   CONCLUSION....................................................................................................20

i

# TABLE OF AUTHORITIES

## Cases

*A & M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 142 Cal. Rptr. 390 (1977) ............... 13, 14

*ACLU* v. *Johnson*, 194 F.3d 1149, 1160-64 (10th Cir. 1999)....................................... 19

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,
    432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006)........................................ 10, 11, 12

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974) ................. 11

*American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) ................................... 19

*Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011) ................... 12

*Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey*,
    602 F. Supp. 314, 321 (S.D.N.Y. 1985)........................................................... 18

*Bonneville Int'l Corp. v. Peters*, 153 F. Supp. 2d 763, 766 fn. 3 (E.D. Pa. 2001) ......................... 5

Capitol Records, Inc. v. Naxos of Am., Inc., 4 N.Y.3d 540 (2005) ................................. 1, 7, 9, 20

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 134 (2d Cir. 2008)................. 5

*CBS, Inc. v. Garrod*, 622 F. Supp. 532 (M.D. Fla. 1985)......................................... passim

*Central Valley Chrysler-Jeep v. Witherspoon*,
    456 F. Supp. 2d 1160, 1184 (E.D. Cal. 2006)................................................... 19

*Country Manors Asso. v. Master Antenna Sys.*,
    534 So. 2d 1187, 1192 (Fla. 4th DCA 1988)................................................... 16

*Deravin v. Kerik*, 335 F.3d 195, 204 (2d Cir. 2003)................................................... 18

*Dickman v. Comm'r*, 465 U.S. 330, 336 (1984) ......................................................... 7

*Dillon v. NBCUniversal Media, LLC*,
    2013 U.S. Dist. LEXIS 100733 (C.D. Cal. June 18, 2013) ............................... 12

*Erie v. Tomkins*, 304 U.S. 64 (1938)..................................................................... 11

*Exxon Corp.* v. *Governor of Maryland*, 437 U.S. 117, 127 (1978) ............................... 18

*Goldstein v. California*, 412 U.S. 546 (1973)......................................................... 6, 18

*In re Aqua Clear Techs, Inc.*, 361 B.R. 567, 574-75 (Bankr. S.D. Fla. 2007).............................. 14

*In re Estate of Corbin*, 391 So. 2d 731, 732 (Fla. 3d DCA 1980) ......................................... 13, 14

*Int'l Tape Mfrs. Asso. v. Gerstein*, 344 F. Supp. 38 (S.D. Fla. 1972)............................................. 9

*Int'l Tape Mfrs. Asso. v. Gerstein*, 494 F.2d 25 (5th Cir. 1974)................................................... 9

*Intelsat Corp. v. Multivision TV LLC*, 2010 U.S. Dist. LEXIS 138955, at *14 -*16 ............. 13, 14

*Jacobs Wind Elec. Co. v. Dep't of Transp.*, 626 So. 2d 1333 (Fla. 1993) .................................... 15

*Joe Hand Promotions, Inc. v. Hart*,
2012 U.S. Dist. LEXIS 53335 *5 (S.D. Fla. Apr. 16, 2012) ...................................... 13, 14

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
552 F.3d 1033 (9th Cir. 2009) ....................................................................... 17

*Kisling v. Rothschild*, 388 So. 2d 1310, 1313 (Fla. Dist. Ct. App. 1980) .......................... 9

*Korman v. Iglesias*, 736 F. Supp. 261 (S.D. Fla. 1990) .............................................. 15

*Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44 (1980) ................................. 18

*Mercury Record Productions, Inc. v. Economic Consultants*,
218 N.W.2d 705 (1974) ........................................................................... 9, 11

Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,
199 Misc. 786 (Sup. Ct. 1950) ............................................................... 1, 7, 11

*Miller v. Wallace Int'l Trucks, Inc.*, 532 So. 2d 1276 (Fla. 2d DCA 1988) ................. 15

*Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth.*,
162 F. Supp. 2d 1343, 1354 (M.D. Fla. 2001) ............................................... 18

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) ........................ 18

*Nat'l Helicopter Corp. of Am. v. City of N.Y.*, 137 F.3d 81 (2d Cir. 1998) ................................. 18

*NCAA v. Roberts*, 1994 U.S. Dist. LEXIS 21576 (N.D. Fla. Nov. 8, 1994)................................. 19

*Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985)..................... 18

*Nealy v. Ross*, 249 So. 2d 522, 523 (Fla. 3d DCA 1971) ........................................... 13, 14

*Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533 (M.D. Fla. 1990) ................... 9

*New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982) ...................................... 18

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002) ............................................ 6

*Paramount Pictures Corp. v. Carol Pub''g Grp.*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998) ............. 20

*Passailaigue v. United States*, 224 F. Supp. 682, 686 (M.D. Ga. 1963) ........................................ 8

*Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997) ..................... 17

*Petrella v. MGM*, 134 S.Ct. 1962 (2014)......................................................................... 20

*Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp. 293, 304 (D.V.I. 1992), ............. 19

*Shaw v. State*, 510 So. 2d 349, 351 (Fla. 2d DCA 1987)................................................ 15

*SmokEnders, Inc. v. Smoke No More, Inc.*,
   1974 U.S. Dist. LEXIS 6183 *30-31 (S.D. Fla. 1974) .................................................. 9, 10

*Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009) ............................................. 19

*SoundExchange, Inc. v. Librarian of Cong.*, 571 F.3d 1220, 1222 (D.C. Cir. 2009) ..................... 5

*State v. Dunmann*, 427 So. 2d 166, 169 (Fla. 1983) ........................................................ 16

*State v. West*, 262 So. 2d 457, 458 (Fla. 4th DCA 1972) ................................................. 16

*Tambourine Comercio Internacional, SA v. Solowsky*,
   312 F.Appx. 263, 278-79 (11th Cir. 2009) ....................................................................... 15

*Tatum Bros. Real Estate & Inv. Co. v. Watson*, 92 Fla. 278, 289 (1926) ....................................... 7

*Total Mktg. Techs. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*,
   2012 U.S. Dist. LEXIS 1829 at *9 ............................................................................... 13

*United Contractors, Inc. v. United Constr. Corp.*,
   187 So. 2d 695 (Fla. Dist. Ct. App. 1966) .................................................................... 7

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ................................................ 17, 20

*United States v. Gold*, 743 F.2d 800, 820-821 (11th Cir. 1984) ............................................. 16

*United States v. Gonzales*, 520 U.S. 1, 5 (1997) ............................................................ 18

*Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) ............................................. 11

*Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) ............................................ 13, 14

*White* v. *Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983) ............................... 18

*Wyoming v. Oklahoma*, 502 U.S. 437, 112 S.Ct. 789 (1992) ................................................... 19

*Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008) ............................................. 19

<u>Statutes</u>

17 U.S.C. § 106 ....................................................................................................... 8

17 U.S.C. § 301(c) ........................................................................................... 6, 18, 19

Fla. Stat. § 540.11 .................................................................................................. 7

Fla. Stat. § 772.11 ................................................................................................ 14

Fla. Stat. § 812.012 ................................................................................................. 7

Fla. Stat. § 812.012(3)(a) ......................................................................................... 15

Fla. Stat. § 812.012(3)(b) ......................................................................................... 15

Fla. Stat. § 812.012(4)(b) ................................................................................................ 15

Fla. Stat. § 812.014 ................................................................................................. 14, 15

Fla. Stat. § 812.014(1) ................................................................................................... 15

<u>Other Authorities</u>

6 W.F. Patry, Patry On Copyright § 18.55 at 18-198 (2010 ed.) ...................................... 6

Black's Law Dictionary 1344 (7th ed. 1999) ................................................................. 19

http://en.wikipedia.org/wiki/Progressive_download .................................................. 5, 19

## I.  **INTRODUCTION.**

Florida law is very clear in its rejection of Sirius XM Radio, Inc.'s ("Sirius XM") contention that recordings that were initially fixed *before* February 15, 1972 ("pre-1972 recordings") are in the public domain.  Yet, that is the contrived reason that Sirius XM gave as its justification for exploiting tens of thousands of pre-1972 recordings without a license and without paying a penny in royalties.  But in its haste to steal the artistic creations of older artists, Sirius XM ignored the fact that Section 301 of the Copyright Act explicitly leaves to the individual states the sole and exclusive right to protect pre-1972 recordings – *and Florida has long provided that protection* based on common law copyright infringement, unfair competition, conversion, and civil theft.  *See e.g., CBS, Inc. v. Garrod*, 622 F. Supp. 532 (M.D. Fla. 1985). *See e.g., CBS, Inc. v. Garrod*, 622 F. Supp. 532 (M.D. Fla. 1985) *aff'd without opinion*, 803 F.2d 1183 (11th Cir. 1986) ("a record producer's common law copyright protects the record itself, whether it is the master recording or a copy" and it has "an intangible property interest in the time, effort and expense of producing the records").

Now when faced with the stark reality that pre-1972 recordings are not in the public domain, Sirius XM asks this Court to legislate away its misconduct based on so-called "contrary understandings between the music and broadcasting industries" that do not exist and, even if they did, are not law **(Motion at p. 1)**; an irrelevant and misleading discussion of the history of the performance right in sound recordings under the federal Copyright Act that by its very terms is not applicable to pre-1972 recordings **(Motion at pp. 5-8)**; policy arguments that are beyond the province of the Court and, in any event, misguided **(Motion at pp. 15-18)**; and a dormant Commerce Clause argument that has been repeatedly rejected by the United States Supreme Court **(Motion at pp. 18-20)**.  The law – and the law alone – is what must guide this case, not Sirius XM's made-up claims of historical acquiescence or end of the world prognostications if the law is applied to Sirius XM's conduct.

Ultimately, what Sirius XM cannot dispute – and what is fatal to all of its arguments – is that the broad ownership rights in the artistic performances embodied in pre-1972 recordings necessarily includes the right to exclude Sirius XM from using or exploiting that performance *in any manner whatsoever*.  Florida statutory and common law provide protection for *all* of the rights inherent in recordings – not just some of them – and this includes reproduction and distribution rights (which Sirius XM does not dispute) and performance (which, as explained

below, Sirius XM cannot dispute). Sirius XM does not give music away for free, and it certainly should not expect legendary artists to do so either.

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

Pre-1972 recordings comprise the historical backbone of the music industry and include every sound recording that was fixed prior to February 15, 1972. Pre-1972 recordings also comprise a significant part of Sirius XM's satellite and Internet services. However, Sirius XM knowingly and intentionally exploits all of those recordings without a license **(Geller Decl. ¶ 4, Ex. 3 [Frear Depo. 58:10-16, 66:16-67:2, 77:20-81:15; 90:11-92;25]),** and without paying any royalties or fees to the owners of those recordings. **(Geller Decl. ¶ 5, Ex. 4 [Frear Depo. 69:10-16]).** Sirius XM tries to justify its conduct by making the patently false argument that pre-1972 recordings are in the public domain. As Sirius XM's 30(b)(6) designee (David Frear) testified:

> Q. Is it Sirius XM's position that pre-1972 recordings are in the public domain?
> A. Yes. **(Geller Decl. ¶ 6, Ex. 5 [Frear Depo. 25:19:21])**[1]
>                                  * * *
> Q. ...At any point in time has Sirius XM ever entered into any license which granted it the right to copy any of the recordings on Schedule A?
> A. To my knowledge, we've never entered into discussions with The Turtles with respect to their songs. That -- my understanding is that they're in the public domain and so we simply are using them under that theory. **(Geller Decl. ¶ 6, Ex. 5 [Frear Depo. 75:13-76:2])**

In light of Sirius XM's unlicensed and unlawful use of pre-1972 recordings, on September 3, 2013, Flo & Eddie filed suit against Sirius XM for common law copyright infringement, misappropriation/unfair competition, conversion, and civil theft.[2]

### A.   The Parties.

#### 1.   Flo & Eddie (The Turtles).

The Turtles were formed by teenagers Howard Kaylan, Mark Volman, Don Murray, Al Nichol, Charles Portz, and Jim Tucker in 1965. They were signed by the independent record

---

[1] This was at least the second time that Frear testified in this manner. The first time was before the Copyright Royalty Board, which consists of a panel of three judges who determine rates and terms for statutory licenses for post-1972 recordings under the federal Copyright Act. **(Geller Decl. ¶ 7, Ex. 6 [Frear Depo. 35:13-36:12])**

[2] Because pre-1972 recordings are governed on a state by state basis, Flo &Eddie also filed class actions in California, *Flo & Eddie, Inc. v. Sirius XM Radio*, Inc., CV-13-05693 (PSG), and New York, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 13-CIV-5784(CM).

label White Whale Record Co., Inc. ("White Whale") to a recording agreement on May 24, 1965. **(Volman Decl. ¶ 2)**  In the late summer of 1965, The Turtles achieved breakthrough success with their cover of the Bob Dylan song "It Ain't Me Babe," which was followed by in 1966 by the hit "You Baby."  Thereafter, in 1967, The Turtles released "Happy Together."  That song not only became their biggest hit but it is widely recognized as one of the great iconic recordings of 1960s, and, in particular, the 1967 social phenomenon known as the "Summer of Love."  The hits continued with "She'd Rather Be With Me," in 1967, "Elenore" in 1968, and "You Showed Me" in 1969. **(Volman Decl. ¶ 3)**

In 1970, a dispute arose between The Turtles and White Whale regarding White Whale's failure to pay royalties to The Turtles.  On April 27, 1970, this dispute led to the filing of a lawsuit by The Turtles against White Whale in Los Angeles Superior Court.  Subsequently, the parties agreed to a settlement whereby in exchange for a release and waiver of claims by The Turtles (including a waiver of the large amount of underpaid royalties owed to The Turtles), White Whale transferred to The Turtles all right, title and interest in and to the original master recordings of The Turtles.  This transfer included the 100 master recordings listed on Exhibit A to the Complaint in the instant case.  Thereafter, the other members of The Turtles transferred all of their rights, title, and interest in and to The Turtles' master recordings and the name The Turtles to Kaylan and Volman. **(Volman Decl. ¶¶ 4-6)**  Kaylan and Volman then transferred all of the rights to The Turtles' master recordings to Flo & Eddie, a corporation created in 1971 and owned and controlled exclusively by them.

For the last four decades, Flo & Eddie has been exploiting The Turtles' master recordings by, among other things, licensing the rights to make and sell records and licensing the rights for The Turtles' recordings to be used in movies, TV shows, and commercials.  More recently, Flo & Eddie has licensed The Turtles' recordings to The Orchard to be exploited digitally, including through the iTunes and Amazon stores.  In addition, Kaylan and Volman continue to devote their time and effort to promoting The Turtles and their music, and have been the main act on annual summer tours, such as the "Happy Together Tour," which features The Turtles and other musical groups from the 1960s. **(Volman Decl. ¶ 7)**

## 2.   Sirius XM.

Sirius XM has built a massive multi-billion dollar business that provides music on a subscription fee basis to over 25 million subscribers through its satellite and Internet radio systems.  Sirius XM readily admits being the largest radio broadcaster in the United States

*measured by revenue*. **(Geller Decl. ¶ 8, Ex. 7.)** In exchange for monthly subscription fees which range from $9.99-$18.99, a subscriber can get access to, among other things, Sirius XM's broadcasts of commercial-free music **(Geller Decl. ¶ 8, Ex. 8.),** including many channels devoted solely to playing pre-1972 recordings, such as "40s on 4," "50s on 5," and "60s on 6." **(Geller Decl. ¶ 8, Ex. 9.)** In addition to its satellite radio service, Sirius XM also streams and distributes music over the Internet. Sirius XM's Internet service includes most of the channels offered by Sirius XM as part of its satellite service. However, Sirius XM's Internet service also offers channels, features, and mobile and smart phone applications that are not available through the satellite service. The Internet service also includes Sirius XM On Demand (which allows subscribers the ability to download certain broadcasts from a catalog of content) and MySXM (which permits personalization of the music listening experience). **(Geller Decl. ¶ 8, Ex. 10.)**

    **B.**    <u>**Sirius XM's Reproduction and Distribution of Pre-1972 Recordings.**</u>

In virtually every step of the process of operating its satellite and Internet radio services, Sirius XM makes reproductions and distributions of pre-1972 recordings (including many of The Turtles recordings identified on Exhibit A to the complaint). Those reproductions start with Sirius XM's creation of vast music libraries and databases, of which there are three: Prophet, Dalet 5.1, and Dalet Plus **(Geller Decl. ¶ 9, Ex. 11 [Smith 2/11/14 Depo. 154:2-8]),** each of which contains tens of thousands of pre-1972 recordings, including many of The Turtles recordings. **(Geller Decl. ¶ 10, Ex. 12 [Smith 3/12/14 Depo. 38:6-44:19])** From there, Sirius XM copied its entire Prophet, Dalet 5.1, and Dalet Plus music libraries and databases to create backup libraries and databases and then copied them again to create disaster recovery libraries and databases. **(Geller Decl. ¶ 11, Ex. 13 [Smith 2/11/14 Depo. 154:13-157:7, 73:3-77:19])** In addition, Sirius XM created additional copies of those libraries and databases (including pre-1972 recordings) to give to third parties, such as Omnifone, Rock and Roll Hall of Fame, Graceland Estate, and Margaritaville. **(Geller Decl. ¶ 12, Ex. 14 [Smith 2/11/14 Depo. 158:2-165:15], [Smith 3/12/14 Depo. 51:11-55:14])** The Margaritaville database is maintained in Orlando Florida and contains pre-1972 recordings. **(Geller Decl. ¶ 13, Ex. 15 [Smith 2/11/14 Depo. 158:11, 19-21])**

In its Motion (and in the declaration of Terrence Smith), Sirius XM gives a very cleansed version of its reproductions and distributions of pre-1972 recordings in Florida. Even in the face of Sirius XM's cleansing, what is clear is that Sirius XM has reproduced and distributed The Turtles recordings in Florida. Indeed, Sirius XM has reproduced and distributed The Turtles

recordings by creating buffer copies in Florida as part of the process of broadcasting those recordings through its satellite service to its subscribers in Florida.  As Sirius XM admitted in its deposition, each time it broadcasts a recording in Florida, it creates at least two buffered copies – one as part of its terrestrial repeater system located in Florida and one in the receiver of its subscribers located in Florida.  **(Geller Decl. ¶ 14, Ex. 16 [Smith 2/11/14 Depo. 111:15-112:20, 127:14-138:25 ])**  Sirius XM tries to diminish the creation of those buffered copies by describing them as incidental, non-public, or fragmented.  However, the use of adjectives to describe the buffer copies does not change the fact that copies were made in Florida and that Sirius XM had no right to make those copies.  In addition, in its Motion, Sirius XM also ignores that it distributes copies of its recordings to the Florida subscribers of its Internet service by using streaming technology that is commonly referred to as "progressive downloads."  **(Geller Decl., ¶ 15, Ex. 17 [Smith 2/11/14 Depo. 203:18-204:10])**   That type of technology results in a copy of each performance being downloaded to the end user's computer by Sirius XM.  *See* http://en.wikipedia.org/wiki/Progressive_download.  In other words, by using "progressive download" technology, Sirius XM is *distributing an actual copy of each recording to each subscriber* accessing that stream through the Internet.

    C.    <u>**Sirius XM's Performance of Pre-1972 Recordings.**</u>[3]

    As part of its satellite and Internet radio services, Sirius XM performs pre-1972 recordings (including The Turtles' recordings) by broadcasting and streaming those recordings to delivery partners who operate content delivery networks **(Geller Decl. ¶ 16, Ex. 18 [Smith Depo (2/11/14) 176:5-179:17,]; [Smith 3/12/14 Depo. 46:5-20, 96:21-97:25, 104:8-108:21]),** by broadcasting and streaming those recordings directly to its own subscribers **(Answer ¶¶ 6 and 39, [Dkt. 41]; Geller Decl. ¶ 17, Ex. 19 [Sirius XM 12/31/13 10-K pp. 1-5], [Smith 2/11/14 Depo. 194:22-25]),** and by broadcasting and streaming those recordings to the end users of the Dish Network **(Geller Decl. ¶ 18, Ex. 20 [Smith 2/11/14 Depo. 224:22-226:18])**  In addition, Sirius XM has authorized third parties to broadcast and stream recordings to Sirius XM's end users.  **(Geller Decl. ¶ 19, Ex. 21 [Smith 2/11/14 Depo. 33:25-35:25; 176:5-18])**

---

[3] The broadcast of a song over terrestrial or satellite radio constitutes a performance. *SoundExchange, Inc. v. Librarian of Cong.*, 571 F.3d 1220, 1222 (D.C. Cir. 2009).  The same is true for the Internet.  *Bonneville Int'l Corp. v. Peters*, 153 F. Supp. 2d 763, 766 fn. 3 (E.D. Pa. 2001).

III.   **SIRIUS XM IS LIABLE FOR ITS PERFORMANCE OF PRE-1972 RECORDINGS.**

A.   **Florida, Not Federal, Law Governs This Case.**

Unlike recordings made after February 15, 1972, recordings made prior to that date are not covered by federal copyright law and are instead protected by the laws of the individual states. While state protection of pre-1972 recordings has always been the rule, it was specifically codified by Congress in 1971 when it passed the Sound Recording Amendment which for the first time granted federal copyright protection to post-1972 recordings. In so doing, Congress made it clear that with respect to pre-1972 recordings "any rights or remedies under the common law or statutes of any state shall not be annulled or limited by this title until February 15, 2067." 17 U.S.C. § 301(c). Thereafter, the Supreme Court unequivocally confirmed the broad power of the States to protect pre-1972 recordings. *Goldstein v. California*, 412 U.S. 546 (1973); *see also*, 6 W.F. Patry, Patry On Copyright § 18.55 at 18-198 (2010 ed.) ("States are thus free to extend pre-1972 recordings the full panoply of rights granted original works of authorship by the federal Copyright Act and beyond...") [4]

In its motion, Sirius XM provides a lengthy discussion of the history of the performance right in sound recordings under the federal Copyright Act, including Congressional legislative history, Reports to Congress from the United States Copyright Office, Congressional testimony, and a study by the United States Copyright Office. The problem with all of this so-called "evidence" is that it has nothing to do with Florida law.[5] Sirius XM barely mentions § 301(c) in its motion, yet, that statute makes it very clear that the states have complete jurisdiction over the protection of pre-1972 recordings unburdened by any of the limitations of the Copyright Act. Thus, federal law regarding the protection of post-1972 recordings and any attempts to change that law are of no value in determining Florida law with respect to pre-1972 recordings. The same is true for the statements of the Copyright Office.[6]

---

[4] Recordings are to be distinguished from the musical compositions embodied in them. *See e.g.*, *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-1249 (C.D. Cal. 2002). Musical compositions are protected by federal copyright law and are not at issue in this litigation.

[5] For this reason, Exhibits 12-30 attached to the Declaration of Edward Soto are objected to as being irrelevant, non-binding, non-precedential, and inadmissible hearsay.

[6] Although irrelevant, it is important to note that Sirius XM misstates the U.S. Copyright Office's

**B.**     Ownership Of The Artistic Performance In A Recording Includes The Right To Exclude All Others From Using That Performance.

The correct starting point for the analysis in this case must begin with the recognition that that the performances embodied in pre-1972 recordings are a form of property that are entitled to the full protection of Florida law. *CBS, Inc. v. Garrod*, 622 F. Supp. 532, 533 (M.D. Fla. 1985) (finding liability for the unauthorized duplication of the performances embodied in master recordings); *see also* Fla. Stat. § 540.11 (criminal statute defining "owner" of sound recording as "the person who owns the original sounds embodied in the master phonograph record").[7]

While Sirius XM has argued in its Motion for a narrow view of property rights in Florida, in fact, Florida takes a very expansive view. Indeed, Florida courts have long recognized that "while the word 'property,' in common use, is applied to the tangible physical thing commonly called property, in the law it is not the material object, but the right and interest which one has in it, *to the exclusion of others*, which constitutes property." *Tatum Bros. Real Estate & Inv. Co. v. Watson*, 92 Fla. 278, 289 (1926) (emphasis added); *see also United Contractors, Inc. v. United Constr. Corp.*, 187 So. 2d 695 (Fla. Dist. Ct. App. 1966) (holding that property consists in the domination which is rightfully and lawfully obtained over a material thing, with the right to its use, enjoyment and disposition). Similarly, the Florida Legislature also adopted a very broad definition of "property," which it defined to mean "anything of value," including the "rights, privileges, interests, and claims" in tangible or intangible personal property. Fla. Stat. § 812.012.

The right of an owner of property to use that property to the exclusion of others is not a novel proposition. Indeed, it is the *sine qua non* of property ownership. As the United States Supreme Court stated in *Dickman v. Comm'r*, 465 U.S. 330, 336 (1984):

---

position. **(Motion at p. 7)** On March 17, 2014, the Copyright Office stated that "[a] person wishing to digitally perform a pre-1972 sound recording cannot rely on Section 112 and Section 114 statutory licenses and *must instead obtain a license directly from the owner of the sound recording copyright*." (emphasis added) **(Geller Decl. ¶ 20, Ex. 22)**

[7] Florida is not alone in recognizing that artistic performances embodied in pre-1972 recordings are entitled to protection. *See, e.g. Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526 (1969); *A & M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977); *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 797 N.Y.S.2d 352, 830 N.E.2d 250 (2005); *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786 (Sup. Ct. 1950)..

> Of the aggregate rights associated with any property interest, the right of use of property is perhaps of the highest order. One court put it succinctly: 'Property' is more than just the physical thing – the land, the bricks, the mortar – it is also the sum of all the rights and powers incident to ownership of the physical thing.  It is the tangible and the intangible. Property is composed of constituent elements and of these elements the right to *use* the physical thing to the exclusion of others is the most essential and beneficial.  Without this right all other elements would be of little value . . . ." (citing *Passailaigue v. United States*, 224 F. Supp. 682, 686 (M.D. Ga. 1963))

Because the right and ability to exclude others from using a pre-1972 recording is inherent in the ownership of that recording, it is sophistry at its highest level for Sirius XM to suggest throughout its motion that this Court must look for a separate affirmative grant of a performance right in order for such a right to exist.  The bundle of rights that comprise ownership is all encompassing and does not require a separate list or grant of enumerated rights.[8] When viewed from the proper perspective, the issue is not whether Florida has granted a performance right; rather, the issue is whether it has excluded the performance right from the bundle of rights that result from the ownership of the artistic performances embodied in pre-1972 recordings – and the answer to that question is no.  Florida has never once said that the exclusive ownership rights in pre-1972 recordings should be defined differently depending on the method of infringement, or that the protection of property rights is based on how those rights are used.

### C.   Sirius XM Is Liable For Its  Performance of Pre-1972 Recordings.

#### 1.   Common Law Copyright Infringement.

The protection of the artistic performances in pre-1972 recordings takes a number of different forms in Florida starting with – as the court in *Garrod* made quite clear – common law copyright infringement.  In *Garrod*, CBS brought claims for common law copyright infringement, unfair competition, conversion, and statutory theft in connection with Garrod's unauthorized duplication and distribution of the performances embodied in a number of pre-1972 recordings owned by CBS.  The trial court granted summary judgment to CBS on each of the claims, finding that CBS had a protectable property interest in its "professional investment of time, skill and money in the recordings," which Garrod violated.

---

[8] An unqualified grant of ownership under state law (which includes *all* rights) is by definition broader than the grant of limited enumerated rights set forth in 17 U.S.C. § 106.

Undaunted by the holding in *Garrod*, Sirius XM contends that because "each of the sound recordings was published more than four decades ago **(Motion at 8)**, "Plaintiff lost whatever common law copyrights it owned under Florida law." **(Motion at 9)**  Sirius XM's *ipse dixit* is directly contrary to the holding in *Garrod*, which specifically rejected the argument that CBS's distribution and sale of the recordings constituted a "general publication" thereby terminating its copyrights.  As the court in *Garrod* noted, because of the unique nature of the record business, producers of records would no longer be willing to release their recordings if distribution constituted a general publication.  *Garrod*, 622 F. Supp. at 535; *see also Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 554-559 (2005) (discussion of the history of the law regarding publication of pre-1972 recordings and concluding that distribution does not constitute publication.); *Mercury Record Productions, Inc. v. Economic Consultants,* 218 N.W.2d 705 (1974) (same); *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 82 Cal. Rptr. 798 (1969) (public performance of a work is does not place the work in the public domain).[9]

In order to circumvent *Garrod*, Sirius XM misrepresents Florida law by citing *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533 (M.D. Fla. 1990) and *Int'l Tape Mfrs. Asso. v. Gerstein*, 344 F. Supp. 38 (S.D. Fla. 1972) for the proposition that Florida applies the "general publication" rule to pre-1972 recordings. ***Neva did not even involve pre-1972 recordings***.  That case involved ***post***-1972 recordings that were governed by the 1909 Copyright Act.  *Id.* at 1544.  And the District Court's opinion in *Int'l Tape Mfrs.* is of no value since it was ***vacated in its entirety***.  *Int'l Tape Mfrs. Asso. v. Gerstein*, 494 F.2d 25 (5th Cir. 1974).

Sirius XM's second ground for avoiding copyright liability fares no better than its first. Indeed, Sirius XM claims that the "scope of protection afforded to common law copyrights is limited to acts of reproduction and commercial distribution that usurp the right of first publication." **(Motion at p. 9)**  Of course, Sirius XM does not cite a single case dealing with recordings for this proposition.  Instead, Sirius XM cites to cases where other types of content were at issue and, thus, performance was not relevant.  But more importantly, as noted above, because the property rights inherent in the ownership of a common law copyright include the

---

[9] Not only does Sirius XM's publication argument fail as a legal matter, but it fails from a factual perspective as well.  It is Sirius XM's burden to show that the recordings were published, including that Flo & Eddie intended to abandon the rights in the copyrights and dedicate those copyrights to the public.  *Kisling v. Rothschild*, 388 So. 2d 1310, 1313 (Fla. Dist. Ct. App. 1980). Sirius XM submitted no evidence of Flo & Eddie's intent.

right and ability to exclude all others from any use of that copyright, the method of infringement chosen by Sirius XM (i.e. reproduction, distribution, or performance) is of no consequence – ***all uses by Sirius XM are forbidden***. *SmokEnders, Inc. v. Smoke No More, Inc.*, 1974 U.S. Dist. LEXIS 6183 *30-31 (S.D. Fla. 1974).

In *SmokEnders*, the Court found infringement of the common law copyright in unpublished manuals used in connection with smoking cessation programs. The defendant's infringement consisted of the unauthorized oral rendition and copying of the manuals. In finding liability, the *SmokEnders* court first confirmed the basic proposition that the owner of a common law copyright "may restrict the use or enjoyment of" the copyright to "definitely selected individuals or a limited, ascertained class, or he may expressly or by implication confine the subject to some occasions or definite purpose." *Id.* at *29-30. From there, the court had no trouble concluding that the "unauthorized use" of a common law copyright is "piracy" and that that "[i]nfringement of common law copyrights consists in doing, without the consent of the owner, anything which is the sole right of the owner to do." *Id.* at *29-30[10]

As *Garrod* and *SmokeEnders* make clear, the rights afforded by common law copyrights are necessarily broad in scope because they are derived from the ability to exclude ***all*** uses of the copyright. And when it comes to pre-1972 recordings, because the copyright consists of the recorded artistic performances embodied in those recordings (in other words, ***the sounds***), the rights to exclude must extend to all uses of those sounds. Whether the sounds are being sold because they are embodied in a CD or whether they being sold because they are embodied in a digital stream, it is the owner of the recording – and the owner alone – who determines who has the right to make that sale.

### 2.   Unfair Competition.

Florida has never adopted a "one size fits all" approach to defining the parameters of a claim for unfair competition, which is why the court in *Garrod* properly analyzed the claim in that case against the backdrop of the underlying conduct at issue; namely, the pirating of pre-1972 recordings. Sirius XM now asks this Court to reject the analysis in *Garrod* and instead

---

[10] Sirius XM cites *SmokEnders* for the proposition that "actual copying" is required in order to prove common law copyright infringement. **(Motion at p. 9)** *SmokEnders* says no such thing. While copying in *SmokEnders* was found to be an infringement, that does not mean that the court was saying that no other conduct could be infringing, nor would that make sense since the mere identification of one type of conduct does not inoculate all other conduct.

substitute a narrow and inflexible rule that just so happens to not include its infringing conduct. However,  the rigidness of Sirius XM's analysis has been repeatedly rejected.  Indeed,  there is no single set of "elements that apply uniformly to all claims of unfair competition." *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006).  The reason for this flexibility is because "the law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Id.* (citing *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)).  Thus, when mapping the "contours of Florida's *elastic* unfair competition cause of action," courts recognize that "the precise elements of the claim are somewhat elusive" and, therefore, should correspond to the underlying acts of unfair competition on a "case by case basis." *Id.* (emphasis added)

It is this elasticity and flexibility that caused the *Garrod* court to hold that in the context of record piracy, unfair competition consists of three elements: (1) time, labor, and money expended by the plaintiff, (2) competition, and (3) commercial damage."[11]  *Garrod*, 622 F. Supp. at 536.  This is quite different from the "deceptive or fraudulent" standard that Sirius XM contends in its motion is the only way under Florida law to establish unfair competition.  In holding as it did, the *Garrod* court was guided by the United States Supreme Court's decision in *International News Service v. Associated Press*, 248 U.S. 215, 239-40 (1918) which articulated the common sense proposition that unfair competition laws should be used to attach liability to the conduct of people who attempt to profit off the property of others.

> [D]efendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, ***and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown...*** (emphasis added)

*Id.*

While *International News Service* was based on federal common law that ceased to exist as a result of *Erie v. Tomkins*, 304 U.S. 64 (1938) , state courts routinely rely on it in connection with unfair competition claims, including those involving piracy of pre-1972 recordings.  See e.g. *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 82 Cal. Rptr. 798 (1969);  *Metro.*

---

[11] Throughout its Motion, Sirius XM makes the self-serving argument that what it does is not record piracy.  In order to make this argument, Sirius XM first redefines record piracy to exclude exploiting without a license the pre-1972 recordings owned by others.  That sleight of hand is nowhere to be found in the law.

*Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786 (Sup. Ct. 1950); *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937); *Mercury Record Productions, Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 218 N.W.2d 705 (1974). Thus, the *Garrod* court was correct to look to *International News Service* and it was correct to construe unfair competition in a manner that recognized what in fact was "reaped" without being "sown."

Not only does Sirius XM implore this Court to use an inapplicable standard, but it also asks the Court to summarily adjudicate that the element of competition is missing. Once again, Sirius XM posits a very narrow view of the law. Indeed, Sirius XM contends that Flo & Eddie does not compete with Sirius XM because Flo & Eddie is not a provider of satellite services. **(Motion at p. 11)** The problem with Sirius XM's argument is that it is not necessary that Flo & Eddie own a satellite service in order for there to be competition. The competition occurs in the sale of the performances embodied in the pre-1972 recordings. Flo & Eddie sells those performances and so does Sirius XM. The fact that Sirius XM's subscribers can get those performances from Sirius XM necessarily means that they do not have to satisfy their demand for the performances from Flo & Eddie. The content that Flo & Eddie is monetizing is the exact same content that Sirius XM is monetizing – *that is competition*. *See e.g.*, *Dillon v. NBCUniversal Media*, LLC, 2013 U.S. Dist. LEXIS 100733 (C.D. Cal. June 18, 2013); *see also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011).

Equally unavailing is Sirius XM's argument that Flo & Eddie have not suffered commercial damage. Again, much like its other arguments where Sirius XM simply redefines the law in order to exclude its conduct, that it what Sirius XM is attempting to do here as well. Sirius XM defines commercial damage as lost sales (and nothing else) and then concludes that because Flo & Eddie have not identified lost sales, it has not been damaged. **(Motion at p. 11)** Lost sales are but one element of potential damages. The others are unjust enrichment (i.e. the revenues received by Sirius XM in connection with their exploitation of pre-1972 recording) and lost license fees. *AlphaMed Pharms. Corp.*, 432 F. Supp. 2d at 1335. The most logical model of damages here is the revenue received by Sirius XM given that, in the course and scope of its business, Sirius XM specifically identifies and segregates the exact amount of revenue that it claims is attributable to its exploitation of pre-1972 recordings. Flo & Eddie's damages model identifies the exact benefit that Sirius XM is obtaining from its unfair competition – and does so by only using Sirius XM's data and admissions. **(Geller Decl. ¶ 21, Ex. 23 [Expert Report of Michael Wallace])**

### 3.    Conversion.

With respect to Flo & Eddie's third claim for relief for conversion, Sirius XM's sole argument is that "the claim fails because there was no dispossession or deprivation (let alone intent to dispossess)." **(Motion at p. 13)** In making this argument, Sirius XM misstates the law, the facts, and ignores the very simple proposition that the owners of pre-1972 recordings do not have to be dispossessed of the physical recording in order to be dispossessed of the performance of those recordings. The performance of pre-1972 recordings by Sirius XM permanently dispossesses the owners of those recordings of that performance, which constitutes conversion of an intangible business interest under Florida law.

Indeed, liability for conversion attaches when a defendant wrongfully asserts dominion over the property of someone else that is inconsistent with that other person's ownership of that property. *Joe Hand Promotions, Inc. v. Hart*, 2012 U.S. Dist. LEXIS 53335 *5 (S.D. Fla. Apr. 16, 2012). The act of asserting dominion over the property of another does not need to deprive that person of exclusive possession of his property in order to establish liability for conversion. *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993); *Nealy v. Ross*, 249 So. 2d 522, 523 (Fla. 3d DCA 1971).

Moreover, conversion does not require the actual taking of physical property. Florida courts uniformly hold that a claim will lie for a wrongful taking of intangible interests in a business venture. *In re Estate of Corbin*, 391 So. 2d 731, 732 (Fla. 3d DCA 1980); *see also Joe Hand Promotions* LEXIS 53335 at *5-6 (unauthorized taking of television broadcast of a fight constituted conversion); *Garrod*, 622 F. Supp. at 536 (conversion found with respect to the unauthorized taking of the "time, effort and expense" of producing records); *Total Mktg. Techs. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, 2012 U.S. Dist. LEXIS 1829 at *9 (defendant found liable for conversion for wrongfully asserting dominion over plaintiff's confidential business information by diverting phone calls from plaintiff's customers to another company); *Intelsat Corp. v. Multivision TV LLC*, 2010 U.S. Dist. LEXIS 138955, at *14 -*16 (stating that "The allegations of [defendants'] unauthorized transmissions to the satellite and the concomitant disruption of service are acts of dominion over [plaintiff's] satellite services inconsistent with [plaintiff's] ownership")

Significantly, both *Garrod* and *Estate of Corbin* rely on *A & M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 142 Cal. Rptr. 390 (1977) – the seminal case in California dealing with pre-1972 recordings. In *Heilman*, the defendant made and sold records and tapes that contained

recorded performances that were owned by the plaintiff.  In affirming the grant of an injunction and an award of damages, the Court held that duplicating pre-1972 recordings and selling them for profit "presents a classic example of the unfair business practice of misappropriation of the valuable efforts of another" and constitutes, among other things, conversion.  *Heilman* was also relied on by the District Court in California in *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) (finding that owners of two websites were liable for reproducing, selling, and ***publicly performing*** pre-72 recordings without proper authorization).

Under any analysis, Sirius XM's conduct constitutes conversion.  Its performance of pre-1972 recordings is the same assertion of dominion that the defendants in *Joe Hand Promotions* and *Intelsat Corp.* asserted over satellite signals and transmissions.  Moreover, it is "wrongful" in that Sirius XM has never obtained licenses from the owners of the pre-1972 recordings, and it is certainly "inconsistent" with the rights of the owners of those recordings.  To avoid this obvious result, Sirius XM wrongly argues that conversion requires taking ***exclusive possession*** of the property leaving the owner of the property with nothing to use.  However, as clearly set forth in *Warshall and Nealy*, a complete dispossession of the property or total deprivation of rights thereto is not necessary.[12]  But even if that were the law, Sirius XM is ignoring that it is in fact the only one possessing the precise thing that it is converting – the performance of the pre-1972 recordings that it is selling to its subscribers.

### 4.   Civil Theft.

Sirius XM attacks Flo & Eddie's cause of action for civil theft by doing little more than calling it frivolous.  However, on summary judgment, that is not enough.  Because civil theft under Florida law is simply conversion with criminal intent, Sirius XM must establish that there had been no conversion (which it did not do) and it must show that it did not act with criminal intent (which is not an appropriate issue for summary judgment).

A claim for civil theft has its roots in Fla. Stat. § 772.11, which creates a private cause of action for violations of, among other statutes, Fla. Stat. § 812.014.  Section 812.014 provides that:

---

[12] Sirius XM also argues that *Estate of Corbin* and *In re Aqua Clear Techs, Inc.*, 361 B.R. 567, 574-75 (Bankr. S.D. Fla. 2007) hold that liability for conversion can only exist where the converted business interest "could be possessed by one, and only one, person at a time." **(Motion at p. 14, fn. 8)**  Those cases do not say that.

(1)  A person commits theft if he or she knowingly[13] obtains or uses,[14] or endeavors to obtain or to use, the property[15] of another with intent to, either temporarily or permanently:

 (a)  Deprive the other person of a right to the property or a benefit from the property.

 (b)  Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Sirius XM cannot seriously dispute that its use of property (i.e. pre-1972 recordings) owned by others without a license falls within § 812.014.  Nor can it dispute that the protection of intangible property interests of the type at issue in this case have routinely been enforced by both the Florida State and District Courts.  *See e.g., Garrod,* supra; *Jacobs Wind Elec. Co. v. Dep't of Transp.*, 626 So. 2d 1333 (Fla. 1993); *Korman v. Iglesias*, 736 F. Supp. 261 (S.D. Fla. 1990); *Miller v. Wallace Int'l Trucks, Inc.*, 532 So. 2d 1276 (Fla. 2d DCA 1988).

Instead, Sirius XM merely asserts that it was not acting with requisite criminal intent when it exploited that property.  To that end, Sirius XM claims that criminal intent requires a showing that the "taking was somehow fraudulent, deceptive, or kept secret," which it claims is lacking in this case because its taking was open and obvious.  **(Motion at p. 14-15)**  Once again, Sirius XM is playing fast and loose with the law as the case that it cited for this proposition – *Tambourine Comercio Internacional, SA v. Solowsky*, 312 F.Appx. 263, 278-79 (11th Cir. 2009) – says no such thing.  To the contrary, criminal intent does not require fraudulent or deceptive conduct.  Criminal intent exists if there is an intent to temporarily or permanently deprive or appropriate the property (or a benefit from the property) of another.  Fla. Stat. § 812.014(1); *Country Manors Asso. v. Master Antenna Sys.*, 534 So. 2d 1187, 1192 (Fla. 4th DCA 1988); *State v. Dunmann*, 427 So. 2d 166, 169 (Fla. 1983).

---

[13] "Knowingly" is defined as either (1) "with actual knowledge and understanding of the facts or the truth," or (2) "an act done voluntarily and intentionally and not because of mistake or accident or other innocent reason." *Shaw v. State*, 510 So. 2d 349, 351 (Fla. 2d DCA 1987) Sirius XM's conduct satisfies both as it was the result of a conscious decision.

[14] "Obtains or uses" includes "taking or exercising control over property" and "making any unauthorized use, disposition, or transfer of property. Fla. Stat. § 812.012(3)(a) and (b). Sirius XM's conduct satisfies this definition as it exploited pre-1972 recordings without the approval of the owners of those recordings.

[15] "Property" means "anything of value" and includes "tangible or intangible personal property, including rights, privileges, interests, and claims." Fla. Stat. § 812.012(4)(b).

Here, there can be little doubt that Sirius XM intended to deprive the owners of pre-1972 recordings of their property as well as a benefit from the property; namely, the performance right.  Sirius XM knew that it did not own the pre-1972 recordings that it was exploiting and that it did not have the permission of the owners of those recordings to exploit them.  Yet, based on the patently false excuse that pre-1972 recordings were in the public domain – an excuse that no Florida lawyer could endorse in light of *Garrod* – Sirius XM decided that it would forgo licenses and the payment of royalties.  Sirius XM clearly knew about *Garrod* since it based its decision solely on the on legal advice that it received.[16]

> Q.  So, 100 percent of the decision was legal advice?
> A.  Honestly, I'm hard-pressed to think of what else is involved in the decision other than what the applicable law is.
> \* \* \*
> Q.  Were any factors considered in arriving at the decision that Sirius XM did not need a license pre-1972 recordings in connection with its Internet service or its satellite service other than legal advice?
> A.  I think -- I think we looked at what the applicable law was and we took advice on the applicable law.
> Q.  So, does that mean no other factors were considered?
> A.  Not that I can recall.

**(Geller Decl. ¶ 22, Ex. 24 [Frear Depo., 112:16-115:21]**

The record is quite clear that Sirius XM's "public domain" argument is simply a pretext to exploit pre-1972 recordings for free.  Under the rubric of "any excuse will do," Sirius XM simply took what it wanted in complete and utter disregard for the rights of the owners of those recordings.  That is criminal intent.[17]

Not only is Sirius XM's criminal intent clear, but Sirius XM is also now barred from contesting the proof of its intent because it refused to disclose the legal advice that exclusively formed that intent.  The law is clear that a party may not testify as to its intent or assert that it believed that its conduct was in good faith while at the same time shielding from discovery privileged communications and analyses that bear on its state of mind.  *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *see also Cox v. Adm'r United States Steel & Carnegie*,

---

[16] Even if Sirius XM did not know about *Garrod*, ignorance of the law is not always a defense to a specific intent crime.  *United States v. Gold*, 743 F.2d 800, 820-821 (11th Cir. 1984).

[17] Even though Sirius XM's criminal intent is obvious, direct proof of that intent is not required.  Under Florida law, intent can be "inferred from the acts of the parties and from the surrounding circumstances."  *State v. West*, 262 So. 2d 457, 458 (Fla. 4th DCA 1972).

17 F.3d 1386 (11th Cir. 1994); *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009). The selective disclosure of the information that forms a party's intent is not allowed.

In *Bilzerian*, the Second Circuit affirmed the district court's holding that the defendant's proposed testimony about his good faith belief in the legality of his actions would necessarily implicate his communications with counsel, and that the government was entitled to cross-examine him regarding those communications. *Bilzerian*, 926 F.2d at 1292 . As courts have made clear, a party "cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny…access to the advice given by counsel where that advice…played a substantial and significant role in formulating the actions taken by [the defendant]." *Pereira v. United Jersey Bank*, 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997). Thus, a party that affirmatively asserts that its conduct was legal necessarily injects the issue of its knowledge into the case and thereby waives the attorney-client privilege. *Cox*, 17 F.3d at 1419.

Here, Sirius XM confirmed in deposition testimony that legal advice was the only thing that informed its decision to not license pre-1972 recordings. However, Sirius XM also has repeatedly asserted the attorney-client privilege to block both deposition testimony and document discovery that inquired into that legal advice or communications. **(Geller Decl. ¶ 23, Ex. 25)** Because Sirius XM has put its intent and good faith at issue in this litigation, Sirius XM is now not permitted to testify as to any aspect of that intent, including its purported good faith reliance on the legal advice that it received.

## IV.   THE COMMERCE CLAUSE IS NOT APPLICABLE.

In a further misguided attempt to avoid liability for its exploitation of pre-1972 recordings, Sirius XM argues that the regulation of pre-1972 recordings by Florida would "impermissibly regulate extraterritorial conduct in violation of the dormant Commerce Clause." **(Motion at p. 19)** While there is over a hundred years of jurisprudence debating whether and when the Dormant Commerce Clause is applicable, there is no dispute that it is never applicable when Congress **has** spoken. Indeed, "[w]hen Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985) . In fact, "[w]here state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause *even if it interferes with interstate commerce*." *White* v. *Mass. Council of Const.*

*Employers, Inc.,* 460 U.S. 204, 213 (1983) (emphasis added); *see also Nat'l Helicopter Corp. of Am. v. City of N.Y.,* 137 F.3d 81 (2d Cir. 1998) (same). This is because "Congress may use its powers under the Commerce Clause to '[confer] upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy . . . .'" *New England Power Co. v. New Hampshire,* 455 U.S. 331, 340 (1982) (quoting *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 44 (1980).

Here, Congress spoke loudly when it enacted 17 U.S.C. § 301(c) wherein it "specifically authorized" protection of rights in pre-1972 recordings under state common and statutory law. Section 301(c) is explicit both in its authorization and its scope: "[a]ny rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067." "Any" rights means "all" rights, not simply a subset of rights. *United States v. Gonzales,* 520 U.S. 1, 5 (1997) (Absent limiting language by Congress, the word "any has an expansive meaning" and is interpreted to mean all.)

Despite this clear law, Sirius XM invites the Court to ignore the will of Congress, the text of § 301(c), and the plain language of *Goldstein* confirming that the states have the absolute right to protect pre-1972 recordings as they see fit. According to Sirius XM, the only relevant consideration is whether Florida law protecting pre-1972 recordings somehow burdens interstate commerce. Again, that is not the test. *Nat'l Bus. Aviation Ass'n v. City of Naples Airport Auth.,* 162 F. Supp. 2d 1343, 1354 (M.D. Fla. 2001) Moreover, it is of no consequence that Sirius XM might be required to modify its operations or obtain licenses to continue exploiting pre-1972 recordings. *See Exxon Corp.* v. *Governor of Maryland,* 437 U.S. 117, 127 (1978) (rejecting the "notion that the Commerce Clause protects the particular structure or method of operation in a retail market"); *Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey,* 602 F. Supp. 314, 321 (S.D.N.Y. 1985) ("If a regulation is otherwise valid under the Commerce Clause, it is not rendered invalid simply because an operator has to change its market structure."); *Nat'l Fed'n of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("[W]hen a defendant chooses to manufacture one product for a nationwide market, rather than target its products to comply with state laws, defendant's choice does not implicate the commerce clause.")[18]

---

[18] Sirius XM wrongly argues that the "the savings clause of Section 301(c)" relates to just intra-state commerce. **(Motion at p. 19)** First, § 301(c) does not say that. Second, § 301(c) is not a savings clause. *See, e.g.,* Black's Law Dictionary 1344 (7th ed. 1999). Third, the case cited by Sirius XM in support of its argument – *Wyoming v. Oklahoma,* 502 U.S. 437, 112 S.Ct. 789

Not only do courts routinely reject the precise argument that Sirius XM is asking this Court to credit – see *e.g. Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp. 293, 304 (D.V.I. 1992); *Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009); *Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008); *Central Valley Chrysler-Jeep v. Witherspoon*, 456 F. Supp. 2d 1160, 1184 (E.D. Cal. 2006) – but all of the cases cited by Sirius XM are inapplicable because they did not involve a statutory scheme in which Congress authorized states to regulate interstate activities. *See, e.g.*, *American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003); *ACLU* v. *Johnson*, 194 F.3d 1149, 1160-64 (10th Cir. 1999); *NCAA v. Roberts*, 1994 U.S. Dist. LEXIS 21576 (N.D. Fla. Nov. 8, 1994).

## V.   SIRIUS XM IS LIABLE FOR ITS REPRODUCTIONS AND DISTRIUBTIONS.

In its Motion, Sirius XM gives a very cleansed explanation of its activities – all in the hope of convincing the Court that it has not made reproductions or distributions in Florida. That cleansed record consists of Sirius XM only describing its conduct with respect to The Turtles recordings and no others. In fact, this case is a class action. But more importantly, this is also a summary judgment motion – and there is no possible way to conclude that there are no triable issues of fact. For example, Sirius XM does not dispute that it made (and continues to make) buffer copies of pre-1972 recordings in Florida. Sirius XM cannot escape liability by describing those copies as incidental, non-public, or fragmented, which explains why Sirius XM does not cite to any Florida case that recognizes those as exceptions to the law. Attaching descriptive terms does not change the fact that a copy was made or that Sirius XM had no right to make those copies. Moreover, Sirius XM also cannot dispute that it distributes copies of its recordings to residents of Florida by using streaming technology that is commonly referred to as "progressive downloads." **(Geller Decl., ¶ 15, Ex. 17 [Smith 2/11/14 Depo. 203:18-204:10])** That type of technology results in a copy of each performance being downloaded to the end user's computer by Sirius XM. *See* http://en.wikipedia.org/wiki/Progressive_download. In other words, by using "progressive download" technology, Sirius XM is distributing an actual copy of each recording to each subscriber accessing that stream through the Internet.

## VI.   SIRIUS XM'S CLAIM OF ACQUIESCENCE IS MERITLESS.

Sirius XM claims that Flo & Eddie acquiesced to Sirius XM conduct because it "never

---

(1992) – actually holds that where Congress has evinced its intent to allow state action, it does not matter that the state action would otherwise violate the Commerce Clause.

communicated to Sirius XM that it believed that Sirius XM was infringing its rights nor sought compensation of any kind from Sirius XM" **(Motion at p. 4)** and "never demanded that Sirius XM stop" its illegal conduct and "remained silent for over a decade." **(Motion p.15).** However, acquiescence is not one of the twelve affirmative defenses raised by Sirius XM in its Answer. Thus, it is not even an issue in this case.

Furthermore, Flo & Eddie had no obligation to sue Sirius XM or take any action earlier than it did. A copyright owner has no obligation to institute legal proceedings against any particular defendant. *Naxos,* 372 F.3d at 483 ("failure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement or as an indication of abandonment"); *see also Paramount Pictures Corp. v. Carol Pub'g Grp.*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) (holding that there is no duty to instigate legal proceedings).

Moreover, the fact that Sirius XM made substantial investments in its systems and services is irrelevant. It had the full benefit of those systems for all the years outside the limitations period. *See e.g. Petrella v. MGM,* 134 S.Ct. 1962, 1965 (2014) ("It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement. And there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it....Even if an infringement is harmful, the harm may be too small to justify the cost of litigation.").[19] Plus, Sirius XM's assertion that it spent billions of dollars on the expectation of being able to exploit pre-1972 recordings for free is not credible. Sirius XM's systems are the same for both pre- and post-1972 recordings. But more importantly, this argument is contradicted by Frear's testimony and is barred by *Bilzerian.* (See Evidentiary Objections)

## VII.   CONCLUSION.

Sirius XM's decision that pre-1972 recordings are in the public domain and, therefore, not capable of private ownership or legal protection runs headlong into established Florida law to the contrary. Rather than obtaining licenses for either the reproduction or the performance of the pre-1972 recordings that it is admittedly exploiting and profiting from, Sirius XM has now aligned itself with the long list of piratical companies who have used the ease and scalability of

---

[19] Implicit in Sirius XM's argument is that it would have stopped its infringing conduct if only someone had asked it to. We know that not to be true. Indeed, in the face of three lawsuits, Sirius XM still has not stopped its illegal conduct.

the digital distribution of music to build businesses that inflict harm on an unprecedented level. For all the foregoing reasons, Sirius XM's motion should be denied in its entirety.

Respectfully submitted,

HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone: (305) 448-4144
Telecopier: (305) 448-4155

By: /s/ Glen H. Waldman
    Glen H. Waldman, Esq.
    Fla. Bar No. 618624
    Jason Gordon, Esq.
    Fla. Bar No. 0012973

GRADSTEIN & MARZANO, P.C.
Henry Gradstein (*admitted pro hac vice*)
Maryann R. Marzano (*admitted pro hac vice*)
Harvey Geller (*admitted pro hac vice*)
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: (323) 776-3100

Evan S. Cohen (*pro hac vice motion is being filed*)
1180 South Beverly Drive, Suite 510
Los Angeles, California
Telephone: (310) 556-9800
Telecopier: (310) 556-9801

Attorneys for FLO & EDDIE, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2014, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF System.

/s/ Glen H. Waldman
Glen H. Waldman

## FLO & EDDIE, INC. v. SIRIUS XM RADIO, INC., ET AL
### CASE NO.: 13-CV-23182-Moore/Torres

## SERVICE LIST

Edward Soto
WEIL GOTSHAL & MANGES LLP
1395 Brickell Ave, Suite 1200
Miami, FL 33131
Phone: (305) 577-3100
Fax:     (305) 374-7159
Email: edward.soto@weil.com

Bruce Rich
Benjamin Marks
WEIL GOTSHAL & MANGES
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax:     (212) 310-8007
Email: Bruce.rich@weil.com
           Benjamin.marks@weil.com

Michael S. Oberman
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
Florida, NY 10036
Phone: (212) 715-9100
Fax:     (212) 715-8000
Email: moberman@kramerlevin.com