IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case 1:13-CV-23182 (Gayles/Turnoff)

-------------------------------------------------------------------x
FLO & EDDIE, INC., individually and on behalf of
all others similarly situated,

                        Plaintiff,

    -against-

SIRIUS XM RADIO INC., and DOES 1 through
10,

                       Defendants.
-------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF SIRIUS XM'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

## TABLE OF CONTENTS

                                                                           **Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .................................................................................................................................1

I.     SIRIUS XM DOES NOT REQUIRE PLAINTIFF'S CONSENT TO PUBLICLY PERFORM PRE-1972 RECORDINGS UNDER FLORIDA LAW ......................................1

        A.     Public Performances of Plaintiff's Recordings Do Not Constitute Common Law Copyright Infringement ........................................................................1

        B.     Plaintiff's Unfair Competition Claim Fails as a Matter of Law ...................................4

        C.     Radio Broadcasting Does Not Constitute Conversion......................................................6

        D.     Radio Broadcasting Does Not Constitute Civil Theft.......................................................7

II.    17 U.S.C. § 301(C) DOES NOT AUTHORIZE FLORIDA TO VIOLATE THE COMMERCE CLAUSE BY REGULATING NATIONWIDE BROADCASTS..................9

III.   THE COPIES OF PLAINTIFF'S PRE-1972 RECORDINGS MADE IN AID OF SIRIUS XM'S PUBLIC PERFORMANCES ARE NOT ACTIONABLE ............................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**P**AGE(S)

**Cases**

*A&M Records, Inc. v. Heilman*,
    75 Cal. App. 3d 554 (1977) ................................................................................................3, 7

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006) ......................................................................................5

*Am. Booksellers Found. v. Dean*,
    342 F.3d 96 (2d Cir. 2003)........................................................................................................9

*Authors Guild v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014).......................................................................................................10

*Bobbs-Merrill Co. v. Straus*,
    147 F. 15 (2d Cir. 1906), *aff'd*, 210 U.S. 339 (1908) ................................................................4

*Capitol Records, LLC v. BlueBeat, Inc.*,
    765 F. Supp. 2d 1198 (C.D. Cal. 2010) ....................................................................................3

*CBS, Inc. v. Garrod*,
    622 F. Supp. 532 (M.D. Fla. 1985).................................................................................. *passim*

*In re Corbin's Estate*,
    391 So. 2d 731 (Fla. Dist. Ct. App. 1980) ................................................................................6

*Country Manor Ass'n v. Mater Antenna Sys.*,
    534 So. 2d 1187 (Fla. Dist. Ct. App. 1988) ..............................................................................8

*Gasparini v. Pordomingo*,
    972 So. 2d 1053 (Fla. Dist. Ct. App. 2008) ..............................................................................7

*Int'l News Serv. v. Associated Press*,
    248 U.S. 215 (1918)..................................................................................................................4

*Int'l Tape Mfrs. Ass'n v. Gerstein*,
    344 F. Supp. 38 (S.D. Fla. 1972), *vacated*, 494 F.2d 25 (5th Cir. 1974).................................3

*Intelsat Corp. v. Multivision TV LLC*,
    No. 10-21982-CIV, 2010 WL 5437261 (S.D. Fla. Dec. 27, 2010)...........................................6

*Joe Hand Promotions, Inc. v. Hart*,
    No. 11-80971-CIV, 2012 WL 1289731 (S.D. Fla. Apr. 16, 2012)...........................................7

## TABLE OF AUTHORITIES
## (continued)

**PAGE(S)**

*Manasa v. Univ. of Miami*,
   320 So. 2d 467 (Fla. Dist. Ct. App. 1975) (per curiam) ............................................................3

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
   117 F. Supp. 2d 1322 (M.D. Fla. 2000)......................................................................................4

*New England Power Co. v. New Hampshire*,
   455 U.S. 331 (1982)....................................................................................................................9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..................................................................................................10

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (per curiam).........5, 6

*Santilli v. Cardone*,
   No. 8:07-CV-308-T-23MSS, 2008 WL 2790242 (M.D. Fla. July 18, 2008) ............................6

*SmokEnders, Inc. v. Smoke No More, Inc.*,
   No. 73-1637, 1974 WL 20234 (S.D. Fla. Oct. 21, 1974) ..........................................................3

*State v. Dunmann*,
   427 So. 2d 166 (Fla. 1983)..........................................................................................................8

*Tambourine Comercio Internacional, SA v. Solowsky*,
   312 F. App'x 263 (11th Cir. 2009) .............................................................................................7

*Total Marketing Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*,
   No. 8:10-CV-2680-T-33TBM, 2012 WL 33150 (M.D. Fla. Jan. 6, 2012)................................7

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991).....................................................................................................8

*United States v. White*,
   887 F.2d 267 (D.C. Cir. 1989)....................................................................................................8

*Warshall v. Price*,
   629 So. 2d 903 (Fla. Dist. Ct. App. 1993) .................................................................................7

*WCVB-TV v. Boston Athletic Ass'n*,
   926 F.2d 42 (1st Cir. 1991) (Breyer, J.).....................................................................................4

# TABLE OF AUTHORITIES
## (continued)

**P**AGE(S)

*Wyoming v. Oklahoma*,
  502 U.S. 437 (1992) ................................................................................................................9

**Statutes**

17 U.S.C. § 106 ..............................................................................................................................3

17 U.S.C. § 301 ..............................................................................................................................9

**Other Authorities**

Joseph Singer, *Property* § 1.1.2 (4th ed. 2014) .............................................................................2

*Music Licensing Study: Second Request for Comments*, 79 Fed Reg. 42,833 (July 23, 2014) .......1

**PRELIMINARY STATEMENT**

Plaintiff's Response exposes the glaring weakness in its action: the complete absence of precedent either to support its claims or to warrant this Court recognizing a broad new right under Florida law.  Solely on the basis of 15 of its works having been performed by Sirius XM—and Sirius XM thereby having engaged in activity identical to that of generations of radio broadcasters and thousands of other Florida businesses from bars to bowling alleys—Plaintiff presses for a novel construction of Florida law that would retroactively render unlawful *all* performances of *all* Pre-1972 Recordings across *all* such entities.  Plaintiff makes no effort to explain why, if it has long possessed the unlimited property rights it asserts, it has failed for nearly fifty years to act on them, let alone to justify as a matter of Florida law or policy so destabilizing an outcome for the entertainment industry.  In the same vein, apart from the *ipse dixit* assertions that the telling record as to Congress' treatment of Pre-1972 Recordings (Mot. 5-8) is "irrelevant" and has "nothing to do with Florida law," Resp. 6 & n.5, Plaintiff is unable to harmonize the import of Congress' determination to leave public performances of Pre-1972 Recordings unregulated with its proposed expansive interpretation of Florida law.[1]  At bottom, Plaintiff improperly asks this Court to rewrite Florida law as if it were itself a legislative body.

**ARGUMENT**

I.   **SIRIUS XM DOES NOT REQUIRE PLAINTIFF'S CONSENT TO PUBLICLY PERFORM PRE-1972 RECORDINGS UNDER FLORIDA LAW**

   A.   **Public Performances of Plaintiff's Recordings Do Not Constitute Common Law Copyright Infringement**

Plaintiff cannot identify a single Florida case recognizing the purported public performance right that Plaintiff seeks to enforce here.  Plaintiff attempts to locate such a right in *CBS, Inc. v. Garrod*, 622 F. Supp. 532 (M.D. Fla. 1985) ("*Garrod*"), but that reliance is badly misplaced.  To start, Plaintiff is simply wrong that *Garrod* found the defendant liable for common law copyright infringement.  *See* Resp. 8.  The opinion makes clear in its very first sentence that CBS alleged only unfair competition, conversion, and statutory theft.  *Garrod*, 622

---

[1] The Copyright Office has rejected Plaintiff's effort to enlist it as an advocate for Plaintiff's position.  *See* Resp. 6 n.6.  It recently reiterated that, "as a factual matter," it was not aware of any state having "affirmatively acknowledged a public performance right in pre-1972 recordings" at the time it issued its 2011 report on Pre-1972 Recordings.  *Music Licensing Study: Second Request for Comments*, 79 Fed Reg. 42,833, 42,834 n.3 (July 23, 2014) (Supplemental Declaration of Edward Soto (Sept. 8, 2014) ("Soto Supp. Decl.") Ex. 1).

F. Supp. at 533.  The defendant, not CBS, raised the issue of common law copyright in relation to its affirmative defense relating to the prior publication of the recordings at issue.  *Id.* at 533-34.  But the court's inquiry as to "whether Plaintiff has established Defendant's liability" focused on CBS' three causes of action, not common law copyright infringement.  *Id.* at 535-36.  More important, the case involved record piracy—*i.e.*, competing sales of unauthorized copies of sound recordings—rather than public performances of any kind, let alone via radio broadcasting.  Florida courts have repeatedly limited its holding to that context.  Mot. 9-10.  As those courts understood, one non-binding federal case from 30 years ago did not (and could not) expand Florida state law to cover activities other than those before it—much less provide owners of sound recordings with an all-encompassing right against any use of those recordings whatsoever.

Plaintiff attempts to gloss over this obvious distinction by ignoring it, *i.e.*, arguing that "the method of infringement chosen by Sirius XM . . . is of no consequence – all uses by Sirius XM are forbidden."  Resp. 10 (emphasis omitted).  While disarmingly simple, the conception of "property" that underlies Plaintiff's claim to absolute and unqualified rights in its recordings is indefensible.  The entitlements of a property owner to control, dispose of, or profit from the resource in question are *always* subject to rules designed to protect "the legitimate interests of others."  Joseph Singer, *Property* § 1.1.2 (4th ed. 2014).  The law simply does not presume, as Plaintiff erroneously contends, that a property owner enjoys unlimited rights save for previously delineated judicial exclusions.  Rather, the common law requires a nuanced determination of what activities previous courts have found to violate a plaintiff's rights, under what causes of action, and, as applied here, whether Plaintiff can prove that Sirius XM's activities satisfy the elements of such claims.  If Plaintiff's sweeping view of the scope of its rights reflected the law, there would be no need for judicial articulation of the elements of unfair competition or conversion as it applies to commercial uses of sound recordings such as that undertaken in *Garrod*.  All a plaintiff would need to demonstrate was that it owned a sound recording, and that *any use whatsoever* of that work took place without its consent.  All manner of such non-actionable uses—from private performances to resale of used records to radio broadcasts— would be infringements by default.  This, of course, is not the law.  Far from conferring upon authors "the ability to exclude *all* uses of the copyright," Resp. 10, Florida courts have instead required plaintiffs to establish that uses of their material satisfy the elements of their common law claims.  On the uncontested fact record, Plaintiff cannot do so here.

2

Plaintiff alternatively attempts to equate Sirius XM to the record pirates in *Garrod* by mischaracterizing radio broadcasts as the "sale" of "recorded artistic performances." Resp. 10. But a "recorded artistic performance" is just a roundabout way of referring to a sound recording, not a description of the rights the owner of such a sound recording enjoys. Distinct from record pirates, Sirius XM does not engage in sales of such sound recordings; it performs them. While *Garrod* protected the Plaintiff's "recorded performances" (sound recordings) from illegitimate reproductions and distributions (*i.e.*, sales) of copies of those recordings, it said nothing about public performances of them.[2] While it is expedient for Plaintiff to attempt to blur this distinction, it is one that copyright law has recognized throughout its long history. *See* 17 U.S.C. § 106(1), (4), (6); Mot. 6. Plaintiff's own licensing practices reflect such recognition. It has long licensed sales of copies of its Pre-1972 Recordings but has *never* licensed radio broadcasts or webcasts (*i.e.,* public performances) of those same recordings. SXM 56.1 ¶¶ 31-34, 39.

*SmokEnders, Inc. v. Smoke No More, Inc.*, No. 73-1637, 1974 WL 20234 (S.D. Fla. Oct. 21, 1974), the sole copyright case on which Plaintiff relies, does not suggest otherwise. That case, non-binding in any event, is limited not only to unauthorized copying (as opposed to performance), but to the unauthorized copying of *unpublished* materials: the very language quoted by Plaintiff about restricting the dissemination of creative materials to "selected individuals" reflected the court's discussion of an author's right of *first publication* (at which point common-law copyrights evaporate under Florida law[3]), and its broad statement regarding common-law copyright relied, not on Florida law, but solely on a Second Circuit case likewise addressing the protections accorded *unpublished* materials under *New York* law. *Id.* at *12-13

---

[2] Plaintiff's reliance on *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) and *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554 (1977) ("*Heilman*") is similarly misplaced. *Heliman*, like *Garrod*, involved competing sales of unauthorized copies; there were no performances or performance rights at issue. *See* 75 Cal. App. 3d at 560. *Bluebeat* involved a service that sold unlicensed downloads of sound recordings in competition with the plaintiffs. The court based its conclusion that a defendant violates California law when it "duplicates, sells, and performs" Pre-1972 Recordings without a license, 765 F. Supp. 2d at 1206, on its misreading of *Heilman* as providing a performance right.

[3] *See, e.g.*, *Manasa v. Univ. of Miami*, 320 So. 2d 467, 468 (Fla. Dist. Ct. App. 1975) (per curiam); *see also* Mot. 9 (citing cases). Because *Garrod* (as noted) did not involve a common-law copyright claim, and relied on out-of-state precedent, it is not to the contrary. Nor is *Int'l Tape Mfrs. Ass'n v. Gerstein*, 344 F. Supp. 38, 57 (S.D. Fla. 1972), which was vacated on grounds other than the publication point, 494 F.2d 25 (5th Cir. 1974).

(citing *Bobbs-Merrill Co. v. Straus*, 147 F. 15 (2d Cir. 1906), *aff'd*, 210 U.S. 339 (1908)).

### B.     Plaintiff's Unfair Competition Claim Fails as a Matter of Law

Sirius XM's moving brief demonstrated that, outside the context of record piracy, a plaintiff cannot establish unfair competition under Florida law absent a showing of commercial deception by the defendant not present here.  Mot. 9-10.  In response, Plaintiff makes no effort to establish deception, and instead argues that it need not do so under the more limited test set forth in *Garrod*.  This effort to salvage its unfair competition claim fails for at least three reasons.

First, Plaintiff's effort to conflate radio broadcasting with record piracy is unavailing. Congress, the Copyright Office, and the courts alike have long recognized the fundamental distinction.  *See* Mot. 1-2, 6-10, 19-20.  Second, the *Garrod* test does not apply here; it has been strictly limited, by court after court, to the specific context of record piracy.  Mot. 10 (citing cases).  Plaintiff's attempt to extract from that case liability because Sirius XM purportedly is "endeavoring to reap where it has not sown," Resp. 11 (quoting *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239-40 (1918) ("*INS*")), does not alter that conclusion.  As Plaintiff admits, *INS* is no longer good law, Resp. 11, and courts have repeatedly cautioned against so loose of a conception of property rights as that misreading of *INS* would suggest.[4]  *See, e.g.*, *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 45 (1st Cir. 1991) (Breyer, J.) (rejecting claim that defendant had violated the law by reaping where it had not sown and noting that "the law *sometimes* protects investors from the 'free riding' of others; and *sometimes* it does not"); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2000) ("[F]ree riding only becomes detrimental to competition when 'the ability of other parties to free-ride on the efforts of the [defendant] would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." (citation omitted)).

Third, even if the Court were to apply the *Garrod* test, Plaintiff could not meet two of its three elements: competition between itself and Sirius XM, and commercial damage.  In a futile effort to establish competition, Plaintiff argues that it and Sirius XM each offer the "sale of performances" (misleading wordplay, as discussed above) and "[t]he fact that Sirius XM

---

[4] *INS* itself is rooted in competitive harm not present here.  The Court enjoined INS from copying and redistributing to its own subscribers the "hot news" reported by its direct competitor right at the moment AP was about to make the sale itself, an activity that, like record piracy, involves deceptive conduct and a clear usurpation of sales.  *See* 248 U.S. at 235, 241.

4

subscribers can get those performances from Sirius XM necessarily means that they do not have to satisfy their demand for the performances from Flo & Eddie." Resp. 12. Neither proposition has evidentiary support. To the contrary, the record conclusively establishes that: (i) Plaintiff's principals do not consider Sirius XM to be a competitor; (ii) Sirius XM's non-interactive radio broadcasts, in which subscribers have no idea when, whether, or how often they might hear a particular recording, are *not* viewed as substitutes for record sales; (iii) Plaintiff cannot point to a single lost sale or license as a result of Sirius XM's broadcasts; (iv) Plaintiff does not license any other radio stations or webcasters; and (v) Sirius XM does not take performance rights licenses from other owners of Pre-1972 Recordings.[5]  SXM 56.1 ¶¶ 31-34, 38-39, 42, 45-46.

Plaintiff fares no better with its effort to establish the "commercial damage" prong of the *Garrod* test. Plaintiff has no evidence of a single lost sale or license, and its royalty income and sales have been *increasing*, rather than decreasing, over the period at issue, even as Sirius XM's subscriber levels also have grown over the same period. SXM 56.1 ¶¶ 45-46; Pl's Further Resps. to Def. Sirius XM Radio Inc.'s First Set of Interrogs. (Attach. A) (Soto Supp. Decl. Ex. 2). Plaintiff attempts to establish "commercial damage" not with reference to any harm to it, but only with reference to the facts that Sirius XM, like generations of other radio broadcasters, has earned revenue from its broadcast activities. *See* Resp. 12. But neither Sirius XM's ability to generate revenue from its broadcasts nor the desire of Plaintiff's proffered expert to use that revenue in his calculations is legally sufficient to demonstrate that Plaintiff has suffered any commercial damage as a result of those broadcasts in the first instance. The only authority that Plaintiff cites in support of its theory, *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319 (S.D. Fla. 2006), stands for nothing of the sort. To the contrary, because AlphaMed failed to prove "that it would have earned a profit (of any amount) but for Arriva's conduct," the court overturned the jury's compensatory damage award for unfair competition and the other claims at issue. 243 F. Supp. 2d at 1352-55; *see also Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 558 (N.D. Tex. 1997) (claim "fail[ed] conclusively" where

---

[5] The non-Florida cases Plaintiff cites to suggest that one competes merely by "monetizing" another's content, Resp. 12, do not help. For example, in *Arista Records LLC v. Lime Grp. LLC*—yet another case involving record piracy—the court stated that a New York unfair competition claim requires "unauthorized reproduction and distribution" and found competition because the defendant's "[f]ree distribution of the Recordings through LimeWire competes with Plaintiffs' sales of the Recordings." 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011).

plaintiff did not see any drop in sales and no probative evidence of diminution of value of copyrights was introduced), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (per curiam).

      **C.    Radio Broadcasting Does Not Constitute Conversion**

      Florida Supreme Court authority and 60 years of subsequent precedent make clear that a conversion claim requires a showing that a defendant intentionally deprived the plaintiff of possession of its property. *See* Mot. 12-13. Plaintiff ignores entirely its burden to show that Sirius XM intended to deprive Plaintiff of its sound recordings or sales thereof—an impossible task given that Sirius XM, like other radio broadcasters, merely plays its own copies of Plaintiff's recordings. Plaintiff also ignores that claims sounding in copyright do not give rise to claims for conversion. *See Santilli v. Cardone*, No. 8:07-CV-308-T-23MSS, 2008 WL 2790242, at *5 (M.D. Fla. July 18, 2008) ("Copyright infringement will not form the basis of a conversion claim because copying a plaintiff's work . . . fails to deprive the plaintiff of his property.").

      Plaintiff's response is instead to note that intangible interests in a business venture can be converted no different than physical property and then contend that Sirius XM dispossesses Plaintiff not of its recordings, but of *performances* of those recordings. Resp. 13. This is nonsense. Whether tangible or intangible, one converts *property*, not an activity involving such property. (If I take and play your guitar without permission, I've converted the guitar, not your playing of that guitar.) Nor does Plaintiff make any performances that Sirius XM can convert; Sirius XM makes its *own* performances from its *own* copies, which does not interfere in any way with Plaintiff's own use of its recordings. Sirius XM cannot "permanently dispossess" Plaintiff of a performance Plaintiff never had in its possession in the first place, nor can it convert its *own* performances, as Plaintiff is reduced to arguing. *See* Resp. 13.

      The cases offered by Plaintiff in support of some supposed lesser standard cannot overcome this gap in logic. While they show that intangible business interests can be converted, they still require that the defendant be dispossessed of that business interest—*i.e.*, prevented from realizing the benefit or value of the existing business venture. Thus, in *Intelsat Corp. v. Multivision TV LLC*, No. 10-21982-CIV, 2010 WL 5437261 (S.D. Fla. Dec. 27, 2010), the defendant usurped plaintiff's satellite transponder space in a way that disrupted the plaintiff's service and "prevented [the plaintiff] from using the satellite transponder *for any purpose*." *Id.* at *5-6 (emphasis added). In *In re Corbin's Estate*, 391 So. 2d 731, 731-32 (Fla. Dist. Ct. App. 1980), the defendant sold the decedent's entire business, thus depriving the heirs of possession of

the business and its income stream and profits. In *Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC*, No. 8:10-CV-2680-T-33TBM, 2012 WL 33150, at *2-4 (M.D. Fla. Jan. 6, 2012), the counterclaim defendant diverted phone calls from the counterclaim plaintiff's existing and prospective customers away from the counterclaim plaintiff and to itself. Likewise, in *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. Dist. Ct. App. 1993), the conversion occurred not when the defendant duplicated the plaintiff's patient list, but when the defendant used the list to solicit the plaintiff's patients. Finally, in *Joe Hand Promotions, Inc. v. Hart*, No. 11-80971-CIV, 2012 WL 1289731, at *1-3 (S.D. Fla. Apr. 16, 2012), the plaintiff was itself making a pay-per-view performance that it licensed to bars and restaurants; the defendant wrongfully intercepted that broadcast (in violation of federal statutes, no less) and thus interfered with plaintiff's broadcast of that event at rival establishments.

Dispossession of existing business interests is essential to the holdings of both *Garrod* and *Heilman* (on which *Garrod* relies). In each case, the defendants copied and sold the plaintiffs' recordings in direct competition with plaintiff's own sales, thus depriving the owners of sales they would have made themselves. *Garrod*, 622 F. Supp. at 533; *Heilman*, 75 Cal. App. 3d at 564. The logic of those cases does not extend to Sirius XM's broadcast activities which, by Plaintiff's own admission, have no effect on Plaintiff's own ability to sell, license, or publicly perform those recordings. *See* Mot. 10-11, 13-14.

> **D.   Radio Broadcasting Does Not Constitute Civil Theft**

Because civil theft is "simply conversion with intent," Plaintiff's civil theft claim must fall along with its conversion claim. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2008). Plaintiff's attempt to show that Sirius XM has requisite felonious intent fails as well. Contrary to Plaintiff's protestations, *Tambourine Comercio Internacional, SA v. Solowsky*, 312 F. App'x 263 (11th Cir. 2009), was explicitly premised on the defendant's lying about the location of the trust account at issue, all the while disbursing funds from that account for the benefit of a client whom he knew, after litigation regarding those same funds, did not own those funds. *Id.* at 278-79. Sirius XM's public performances of Plaintiff's recordings, made in the same fashion as radio stations across the state and where Plaintiff has stood mute for nearly 50 years, cannot possibly meet that standard. Plaintiff has offered no cases suggesting that performing a Pre-1972 Recording establishes the requisite criminal intent, and Sirius XM made millions of performances of Pre-1972 Recordings for more than a decade without objection from

7

a single record label.[6]  The mere existence of *Garrod*—a case involving record piracy—does not somehow convert Sirius XM's (correct) position that no license is necessary to publicly perform Pre-1972 Recordings into a "patently false excuse" for knowingly illegal behavior, Resp. 16, and a contrary determination would immediately subject all "oldies" radio stations, among others, to staggering liability for theft.  Plaintiff's effort to mischaracterize Sirius XM's position does not alter this reality:  Mr. Frear clearly testified in his deposition that he used the phrase "public domain" not with respect to the sale of pirated copies at issue in *Garrod,* but only to signify that Sirius XM does not need permission to perform Pre-1972 Recordings on its radio services.  Declaration of David Frear (July 15, 2014) ¶ 19 & Ex. F.

Having no evidence of criminal intent, Plaintiff contends that Sirius XM is barred from "contesting the proof of its intent" because it refused to disclose privileged communications.  Resp. 16.  Plaintiff's position—that "a party that affirmatively asserts that its conduct was legal . . . thereby waives the attorney-client privilege," Resp. 17—is absurd.  What *United States v. Bilzerian* actually says is that one cannot use legal advice both as "a shield and a sword " —*i.e.*, to claim criminal intent is lacking *because* your counsel told you that your wrongful actions were in fact legal and then refuse to divulge the relied-upon advice.  926 F.2d 1285, 1292-93 (2d Cir. 1991).  But Sirius XM is not relying on an advice-of-counsel defense to defeat Plaintiff's civil theft claim.  Sirius XM is relying on Plaintiff's failure to adduce *any* evidence of criminal intent.  Sirius XM is more akin in this respect to the defendant in *United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989), whose simple denial of guilt *Bilzerian* was careful to distinguish.  That Mr. Frear indicated in response to deposition questions that Sirius XM acted in accordance with legal advice is not the same as mounting an advice-of-counsel defense.  Nor does the fact that Sirius XM relied on applicable law as to what licenses its activities require—as every legitimate broadcaster no doubt does every day—subject it to the binary choice of forfeiting its attorney-client privilege or waiving its right to assert its innocence.  *See White*, 887 F.2d at 270 ("A rule thus forfeiting the privilege upon denial of *mens rea* would deter individuals from consulting with lawyers to ascertain the legality of contemplated actions …").

---

[6] The counterclaim defendant in *Country Manor Ass'n v. Mater Antenna Sys.*, 534 So. 2d 1187, 1191 (Fla. Dist. Ct. App. 1988), actively prevented the counterclaim plaintiff from entering its property—upon threat of calling the police—to reclaim its property.  *State v. Dunmann*, 427 So. 2d 166, 167 (Fla. 1983) merely clarifies that deprivation need not be permanent, an irrelevant point not in dispute here.

**II.     17 U.S.C. § 301(c) DOES NOT AUTHORIZE FLORIDA TO VIOLATE THE COMMERCE CLAUSE BY REGULATING NATIONWIDE BROADCASTS**

Plaintiff first contends that Section 301(c) of the Copyright Act—which nowhere mentions state-law performance rights—"specifically authorized" the states to protect those rights. *See* Resp. 17-18; *Wyoming v. Oklahoma*, 502 U.S. 437, 458 (1992) ("Congress must manifest its *unambiguous intent* before a federal statute will be read to permit or approve such a violation of the Commerce Clause as Oklahoma here seeks to justify." (emphasis added)). But Section 301(c) does not supply this unambiguous authorization; it is a "standard 'nonpreemption' clause," and so is "in no sense an affirmative grant of power to the states to burden interstate commerce in a manner which would otherwise not be permissible." *New England Power Co. v. New Hampshire*, 455 U.S. 331, 341, 343 (1982) (quotation marks omitted). Unlike the provisions in the cases Plaintiff cites, nothing in Section 301(c) "specifically authorizes" much less reflects Congress' "unambiguous intent" to "alter the limits of state power otherwise imposed by the Commerce Clause," let alone permit state regulation of nationwide performances. *See Wyoming*, 502 U.S. at 458 (quotation omitted). And the legislative history confirms that Congress (at the DOJ and record industry's prompting) only intended Section 301(c) to preserve state *record piracy laws* for Pre-1972 Recordings. *See* Mot. 19 n.12; Declaration of Edward Soto (July 15, 2014) Ex. 30 at 137-38, 1396-97.

Plaintiff next argues that the Commerce Clause is not violated because "Sirius XM might be required to modify its operations or obtain licenses." Resp. 18. This argument ignores the undisputed factual record. Because of technical characteristics inherent in satellite broadcasting and federal regulations, Sirius XM *cannot* modify its operations to distribute state-specific broadcasts and thereby avoid the extraterritorial reach of a Florida performance right. Mot. 19; SXM 56.1 ¶¶ 6-7. Any changes of practice required to conform with Florida law would necessarily implicate Sirius XM's extra-Florida transmissions, thus implicating the Constitutional defect itself. *See Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries," Vermont impermissibly "project[ed] its legislation into other [s]tates.") (quotation omitted).

**III.    THE COPIES OF PLAINTIFF'S PRE-1972 RECORDINGS MADE IN AID OF SIRIUS XM'S PUBLIC PERFORMANCES ARE NOT ACTIONABLE**

Plaintiff argues that factual disputes as to the reproductions made by Sirius XM preclude summary judgment, Resp. 19, but there is no real dispute. Plaintiff misleadingly contends that

Sirius XM unlawfully "distributes copies" of Pre-1972 Recordings by using progressive downloading technology to stream its radio broadcasts. Resp. 19. But contrary to what an unauthoritative Wikipedia page might suggest, Terrence Smith's supplemental declaration conclusively establishes that the music-player software on users' mobile devices merely buffers 20-second fragments of programming to ensure a smooth, uninterrupted stream. *See* Supp. Decl. of Terrence Smith (Sept. 3, 2014) ¶ 3. These short, non-song-specific fragments are encrypted, inaccessible to the user, and discarded as new data flows into the buffer. *Id.* Plaintiff's contention that Sirius XM is liable for buffer copies created as part of its terrestrial repeater system is similarly baseless. Those repeaters buffer only a *millisecond* at a time of the compressed, composite programming stream and discard those fragments immediately. *Id.* ¶ 5.

There simply is no analogy between these temporary, inaccessible fragments and the sale of permanent pirated copies in *Garrod*. The only "copies" made in Florida—a four-second buffer on satellite receivers and the above-described fragmentary buffers on users' internet radio software—are truly incidental to Sirius XM's digital transmissions, are made solely to facilitate lawful public performances, and are never distributed to the public. Florida law has never assigned liability for such fragmentary buffers, whether of sound recordings or any other form of content distributed online. Nor should it: because such buffers are integral to digital streaming of all kinds, assigning such liability would effectively create a backdoor performance right that does not exist on its own. Federal courts assessing buffer and server copies in similar circumstances, in which the uses facilitated other lawful activities and did not "supersede the objects … of the original creation," properly found fair use. *See, e.g.*, *Authors Guild v. HathiTrust*, 755 F.3d 87, 97-99 (2d Cir. 2014) (making copies of copyrighted works on computer servers at multiple locations and on disaster back-up tapes not "excessive or unreasonable" where "necessary to facilitate the services [defendant] provides to the public and to mitigate against the risk of disaster or data loss"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("The copying function performed automatically by a user's computer to assist in accessing the Internet is a transformative use. . . . [A] cache . . . is designed to enhance an individual's computer use, not to supersede the copyright holders' exploitation of their works.").

## CONCLUSION

For the foregoing reasons, Sirius XM is entitled to summary judgment and the Complaint should be dismissed with prejudice.

Dated: September 8, 2014                    Respectfully submitted,

    /s/ *Edward Soto* _____
Edward Soto (Fla. Bar No. 0265144)
edward.soto@weil.com
Weil, Gotshal & Manges LLP
1395 Brickell Ave, Suite 1200
Miami, FL 33131
(305) 577-3100

R. Bruce Rich (admitted *pro hac vice*)
Benjamin E. Marks (admitted *pro hac vice*)
Todd Larson (admitted *pro hac vice*)
John R. Gerba (admitted *pro hac vice*)
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000

and

Michael S. Oberman (admitted *pro hac vice*)
moberman@kramerlevin.com
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9294

*Attorneys for Defendant Sirius XM Radio Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants. All other counsel shall be served by United States mail.

**Plaintiff Flo & Eddie, Inc.'s Counsel:**

Glen H. Waldman
Eleanor T. Barnett
Jason Gordon
Heller Waldman, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133

Henry Gradstein
Maryann R. Marzano
Harvey Geller
Gradstein & Marzano, P.C.
6310 San Vincente Blvd., Suite 510
Los Angeles, California 90048

/s/ Edward Soto_____
Edward Soto (Fla. Bar No. 0265144)
edward.soto@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Suite 1200
Miami, FL 33131
(305) 577-3100

*Attorneys for Defendant Sirius XM Radio Inc.*