UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-CV-23182

FLO & EDDIE, INC., a California
corporation, individually and on behalf of
all others similarly situated,

                Plaintiff,

vs.


SIRIUS XM RADIO, INC., a Delaware
corporation; and DOES 1 through 10,

                Defendants.
_____/

**PLAINITFF, FLO & EDDIE, INC.'S OPPOSITION TO DEFENDANT, SIRIUS XM RADIO, INC.'S SUPPLEMNTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Plaintiff, FLO & EDDIE, INC., by and through its undersigned counsel, files this its Opposition to Defendant, SIRIUS XM RADIO, INC.'s Supplemental Memorandum in Support of its Motion for Summary Judgment on Liability, and in support thereof states as follows:

## I. INTRODUCTION.

While Sirius XM Radio, Inc.'s ("Sirius XM") counsel may be new to the case, the requirements of Rule 11 are not. In a misguided attempt to augment the record, Sirius XM makes two arguments in its Supplemental Memorandum that are patently false.

***First***, Sirius XM argues that *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd Cir. 1940) stands for the proposition that under New York law there is no "performance right" in sound recordings. Leaving aside that *Whiteman* says no such thing, Sirius XM ignores an even bigger problem with *Whiteman*; namely, that it was expressly overruled in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir. 1955). Thus, for almost sixty years, *Whiteman* has not been the law in New York, and has never been the law in Florida.

***Second***, Sirius XM argues that Judge Colleen McMahon's recent ruling ***denying*** Sirius XM's motion for summary judgment "supports Sirius XM's argument that applying a common law performance right in pre-1972 sound recordings to Sirius XM's national broadcasts would violate the Commerce Clause." **(Supp. Memo. at p. 2)** To the contrary, Judge McMahon expressly rejected Sirius XM's dormant Commerce Clause argument, holding that it is "nothing more than a red herring" because a public performance right "is not a state-imposed regulation – even when applied to public performances by a national broadcaster." *Flo & Eddie v. Sirius XM Radio, Inc.*, United States District Court, Southern District of New York, Case No. 13-cv-05784, Dkt 88-1 at 37-39 ("F&E New York Order"). Thus, far from supporting Sirius XM's dormant Commerce Clause argument, Judge McMahon's ruling actually provides a second (and independent) basis to reject it.

## II. *WHITEMAN* WAS OVERRULED.

After having fully briefed motions for summary judgment in three different jurisdictions, and after having lost two of those motions, Sirius XM changed counsel and now claims that *Whiteman* – a case from 1940 that its prior counsel never cited – is somehow "the definitive case on performance rights in sound recordings." **(Supp. Memo. at p. 2)** There is a good reason that Sirius XM's prior counsel in all three jurisdictions never cited this case – *Whiteman* was overruled in 1955 by the very same court that had issued the original opinion. Even during its

1

limited life, the holding in *Whiteman* did not stand for the proposition that there was no performance right in sound recordings.

In *Whiteman*, the only issue that the Second Circuit addressed was whether after the sale of a recording, the owner could enforce a restrictive legend contained on the recording's packaging that stated that it was "[n]ot Licensed For Radio Broadcast." *Whiteman*, 114 F.2d at 87. In addressing this limited issue, Judge Lernard Hand had assumed that, under New York law, the sale of a record to the public constituted a "general publication" that ended all common-law copyright protection. *Id*. at 88-89. Based on this conclusion, Judge Hand reasoned that if all property rights in a musician's performance ended with the initial sale of the recordings embodying that performance, then the owner of that sound recording could not enforce the restrictive legend on the recording. It was on that basis – and that basis alone – that the *Whiteman* court declined to enjoin the public performance of the recordings at issue.

However, in 1950, New York expressed a very different view of its own law. In *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950), the New York Supreme Court held that the sale of a record to the public was ***not*** a general publication and did not end common-law copyright protection. The holding in *Metro. Opera* was the exact opposite of what Judge Hand had assumed the law to be in *Whiteman*. As such, when the Second Circuit revisited the issue in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955), it conceded that its holding in *Whiteman* was wrong and "***is not the law of the State of New York.***" *Id*. (emphasis added) Even Judge Hand – who dissented in *Mercury Records* – agreed with the majority that *Whiteman* was no longer good law in New York. Because the result in *Whiteman* (which, as noted above, was not even as broad as Sirius XM now claims it was) flowed directly from Judge Hand's erroneous conclusion that the publication of a recording ended any common law copyright protection, it is wrong for Sirius XM to suggest that the result in that case nevertheless has continuing vitality. One of the most basic maxims of jurisprudence is that "where the reason of a rule ceased, the rule also ceased." *Funk v. United States*, 290 U.S. 371, 385 (1933); see also *People v. Morton*, 284 A.D. 413, 132 N.Y.S.2d 302 (App. Div. 1954) (same); Cal. Civ. Code § 3510 (same).

Unlike *Whiteman*, the holding in *Mercury Records* remains the law in New York and has been repeatedly reaffirmed, including by New York's highest court in *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 554 (2005) (holding that "the Second Circuit [in *Mercury*

2

*Records*] reconsidered [*Whiteman*] after *Metropolitan Opera* and subsequently stated that [*Whiteman*] was 'not the law of the State of New York.'"). Judge McMahon agreed, stating that "[i]n the context of sound recordings 'it has been the law [in New York] for over 50 years that…the public sale of a sound recording…does not constitute a publication sufficient to divest the owner of common-law copyright protection.'" F&E New York Order at p. 28.

The fact that *Whiteman* has not been the law in New York for over sixty years disposes of Sirius XM's argument regarding the supposed breadth of that decision. *Whiteman* is an overruled, outdated decision that ceased to have applicability in New York in 1950, was never as broad as Sirius XM now claims, and never had any applicability outside of New York. In fact, at the time that *Whiteman* was decided, the Pennsylvania Supreme Court had already held in *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) that the performers of musical works embodied in sound recordings had a protectable common law property interest in the performances in those recordings and that unlicensed radio broadcasts of their recordings violated that right. Again, unlike *Whiteman*, *Waring* is still good law.[1]

In an attempt to resurrect *Whiteman*, Sirius XM misleadingly quotes from various secondary sources. **(Supp. Memo. pp. 2-3)** For example, Sirius XM claims that in 2011 the U.S Copyright Office cited *Whiteman* for the proposition that "state law does not appear to recognize a performance right in sound recordings." Of course, as set forth below, Judge Phillip Gutierrez, Judge Mary Strobel and Judge McMahon do not share that view as evidenced by their rulings. But as importantly, the Copyright Office does not share that view either. On March 17, 2014, the Copyright Office stated that "[a] person wishing to digitally perform a pre-1972 sound recording cannot rely on Section 112 and Section 114 statutory licenses and ***must instead obtain a license directly from the owner of the sound recording copyright***." (emphasis added) **(Geller Decl. ¶ 20, Ex. 22)** And on July 23, 2014, the Copyright Office stated:

> "[O]thers have misread the Office's observation in its [2011] report on pre-1972 sound recordings that "in general, state law does not appear to recognize a performance right in sound recordings" as an official statement that no such protection is (or should be) available under state law. This…is a misinterpretation. While, as a factual matter, a state may not have affirmatively acknowledged a public performance right in pre-1972 as of the

---

[1] In 1956, the Third Circuit also correctly noted that *Whiteman* was "expressly overruled." *See Ettore v. Philco Television Broad. Corp.*, 229 F.2d 481, 488 (3d Cir. 1956).

>Office's 2011 report, the language in the report should not be read to suggest that a state could not properly interpret its law to recognize such a right."[2]

Sirius XM's other secondary sources fare no better.  The law review and journal articles that Sirius XM's cites are simply incapable of raising *Whiteman* from the dead and are equally incapable of altering the law.  In any event, three of the four articles cited by Sirius XM recognize that *Whiteman* was limited to the enforceability of a restrictive legend, and two of them acknowledge that *Whiteman* was overruled.  *See* R. Bard & L. Kurlantzick, *A Public Performance Right In Recordings: How to Alter the Copyright System Without Improving It*, 43 Geo. Wash. L. Rev. 152, 154-55 (1974) (*Whiteman* was overruled in *Metropolitan Opera* and hinged on the restrictive legend and on the supposition that "any common law property. . . in the recorded performances ended with the record's sale, thereby making the restrictive legend on the label ineffective"); S. Diamond, *Sound Recordings and Phonorecords: History and Current Law*, 1979 Univ. Ill. L. Forum 337, 346-48 (1979) (*Whiteman* was based on a federal preemption theory that the sale of a recording divests the owner of any right to control its use and was overruled in *Metropolitan Opera*); D.G. Baird, *Common Law Intellectual Property and the Legacy of International News Service v. Associated Press*, 50 Univ. Chi. L. Rev. 411, 419 (1983) (*Whiteman* was based on the enforceability of a restrictive legend).  As for the fourth article cited by Sirius XM, without any analysis, the authors of that student journal article cite *Whiteman* in a footnote for the proposition that: "[i]n general, states do not appear to recognize a right of public performance in pre-1972 sound recordings"  *See* E. Subotnik & J. Besek, *Constitutional Obstacles? Reconsidering Copyright Protection for Pre-1972 Recordings*, 37 Colum. J. Law & Arts, 327, 338 (2014).  The authors' citation of a single overruled case from 1940 for this "general" fifty-state proposition is as inexplicable as Sirius XM's preoccupation with secondary sources and says more about the journals' editors than the state of the law.

When it comes to an actual analysis of the law, Sirius XM's attempt to define the scope of property rights inherent in the ownership of the artistic performances embodied in recordings by only two types of infringing activity (reproduction and distribution) completely ignores that ownership operates to exclude ***any*** use of that property by others.  *See Dickman v. Comm'r*, 465 U.S. 330, 336 (1984) ("Property is composed of constituent elements and of these elements the right to use the physical thing to the exclusion of others is the most essential and beneficial.

---

[2]  *See* Library of Congress: Copyright Office, Music Licensing Study: Second Request for Comments, 79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014).

4

Without this right all other elements would be of little value. . . .") The right and ability to exclude others from using a pre-1972 recording is what defines infringing activity. The bundle of rights that comprise ownership is all encompassing and does not require a separate list or grant of enumerated rights. When viewed from the proper perspective, the issue is not whether Florida has granted a performance right; rather, the issue is whether it has excluded the performance right from the bundle of rights that result from the ownership of the artistic performances embodied in pre-1972 recordings – and the answer to that question is no, which is the same answer that Sirius XM has also now received in New York and California.

### III.     SIRIUS XM'S COMMERCE CLAUSE ARGUMENT HAS NOW FAILED IN THREE DIFFERENT COURTS.

Although the dormant Commerce Clause has a rather checkered history,[3] even its strongest supporters are not brazen enough to suggest that it can be used to cripple a state's ability to protect common law copyrights from piracy occurring within its own state. Yet, that is precisely the result that Sirius XM argues for here. Indeed, according to Sirius XM, the dormant Commerce Clause permits it to steal the artistic performances embodied in pre-1972 recordings, and Florida is poweless to put a stop to that conduct in its own state because Sirius XM has chosen to operate a nationwide business. That is not the law, which explains the following three rulings rejecting Sirius XM's argument:

**September 22, 2014** -- In *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* United States District Court, Central District of California, Case No. 13-cv-05693 PSG (Dkt. 117), Judge Phillip Gutierrez held that the Dormant Commerce Clause was not applicable becasue 17 U.S.C. § 301(c) authorized protection of rights in pre-1972 recordings under state common and statutory law. ("F&E California Order") Judge Gutierrez stated:

> Sirius XM's argument that state regulation of sound recording performances would violate the Commerce Clause is without merit. See Opp. 21:12-14. "Where state or local government interferes with interstate commerce." *White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 213 (1983); *see also S. Pac. Co. v. State of Ariz. ex rel. Sullivan*, 325 U.S. 761, 769 (1945) ("Congress has undoubted power to redefine the

---

[3] *See General Motors Corp.* v. *Tracy*, 519 U.S. 278, 312, 117 S. Ct. 811, 136 L. Ed. 2d 761 (1997) (Scalia, J., concurring) ("[T]he so-called 'negative' Commerce Clause is an unjustified judicial intervention, not to be expanded beyond its existing domain"); *United Haulers Assn. Inc.* v. *Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 349, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007) (Thomas, J., concurring in judgment) ("The negative Commerce Clause has no basis in the Constitution and has proved unworkable in practice").

5

{00147561.DOCX }

>distribution of power over interstate commerce. It may…permit the states to regulate the commerce in a manner which would otherwise not be permissible"). Because Congress specifically authorized protection of pre-1972 sound recording rights by the states in 17 U.S.C. § 301(c), the California statute protecting those rights is not subject to the Commerce Clause."

*See* Dkt. 103 on file herein, Ex. A, pp. 10-11.

**October 17, 2014** -- In *Capitol Records, Inc. et al. v. Sirius XM Radio, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. BC520981, Judge Mary Strobel also held that the Dormant Commerce Clause was not applicable because 17 U.S.C. § 301(c) authorized protection of rights in pre-1972 recordings under state common and statutory law.  ("Capitol California Order")  Judge Strobel held:

>The Commerce Clause does not prohibit state action where Congress authorizes state action...Here, Congress specifically permitted the states to regulate pre-1972 recordings. (17 U.S.C. 301(c).

*See* Dkt. 106 on file herein, Ex. A, p. 8.

**November 14, 2014** --  In *Flo & Eddie v. Sirius XM Radio, Inc.*, United States District Court, Southern District of New York, Case No. 13-cv-05784 (CM), Judge McMahon held that the  protection of state property rights was not a "regulation," therefore, the Commerce Clause was not even implicated.  Judge McMahon stated:

>[S]irius' Dormant Commerce Clause challenge fails for a different reason: New York does not 'regulate' anything by recognizing common law copyright. The issue is nothing more than a red herring.  The Clause itself 'withholds from the states[, ]the power to regulate Commerce among the several States.'  *SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 510 (2d Cir. 1995) (original alterations omitted).  Thus, 'the strictures of the dormant Commerce Clause are not activated unless a state action may be characterized as a 'regulation.' *Id*; *United Haulers Ass 'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261F.3d245, 254 (2d Cir. 2001) ajf'd, 550 U.S. 330 (2007); *Metro. Washington Chapter v. D.C.*, No. CV 12-853, --- F. Supp. 2d ---, 2014 WL 3400569, at *16 (D.D.C. July 14, 2014).
>
>* * *
>
>What Sirius objects to is a 'general principle respecting the liability of all persons within the jurisdiction' of" New York.  *Sherlock*, 93 U.S. (3 Otto) at 103.  In particular, Sirius objects to property law principles that establish liability for infringing another party's copyright.  But that property law principle is not a state-imposed regulation – even when applied to public performances by a national broadcaster.  Sirius has not cited, and the Court has not found any cases holding that a state's general property law and associated liability principles could, in and of

6

{00147561.DOCX }

>themselves, violate the Dormant Commerce Clause. Holding Sirius liable might affect interstate commerce - just as a finding of liability did in Sherlock. *Id.* at 103. But concluding that Sirius is liable under New York property law principles would not amount to a 'regulation' of interstate commerce by New York. It would, therefore, not give rise to a Dormant Commerce Clause claim.

*See* Dkt. 113-1 on file herein, p. 37-39.

Whether this Court relies on 17 U.S.C. § 301(c) or simply concludes that the protection of property rights is not a regulation, the result is the same – Sirius XM loses.[4]

### A. Congress Has Authorized the States to Exclusively Protect Pre-72 Recordings.

There can be no dispute that "[w]hen Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985); s*ee also White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983) ("[w]here state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." Here, as Judge Gutierrez and Judge Strobel held, 17 U.S.C. § 301(c) provides that express authorization: "[a]ny rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067."

Section 301(c) codifies Congressional intent not only to exempt the states from federal preemption but also to affirmatively and expressly provide the states with the unlimited power to impose "rights and remedies under the common law or statutes" in order to protect pre-1972 recordings. That is consistent with the Supreme Court's holding in *Goldstein v. California*, 412 U.S. 546, 559 (1973) that the State of California can regulate pre-1972 recordings without violating the Copyright Clause or the Commerce Clause.

The authorization granted in § 301(c) ends Sirius XM's dormant Commerce Clause argument. For example, in *Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp. 293, 304 (D.V.I. 1992), the Court held that Virgin Island's planning and development regulations that

---

[4] Sirius XM's dormant Commerce Clause argument is at odds with the position it has taken in this case in order to avoid liability for its reproduction and distribution of pre-1972 recordings it engages in other states. With respect to those activities, Sirius XM argues that the law in Florida does not extend beyond Florida's borders and thus has no relevance to its activities outside of Florida. **(Motion p. 20)** However, in order to avoid liability for its performance of pre-1972 recordings, Sirius XM argues that the law in Florida extends beyond Florida's borders and, thus, violates the dormant Commerce Clause.

7

{00147561.DOCX }

governed the lease of seaplane ramps did not violate the dormant Commerce Clause because the Federal Aviation Act provided that it "shall not be construed to limit the authority of any State...to exercise its proprietary powers and rights." Similarly, in *Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009), in defending against claims of victims of a bus accident, Greyhound claimed that any state action premised on the absence of seatbelts violated the dormant Commerce Clause because federal law did not require the installation of seatbelts in buses. The Court rejected this argument, noting that § 30103(e) of the National Traffic and Motor Vehicle Safety Act (*i.e.* "[c]ompliance with a motor vehicle standard under this chapter does not exempt a person from liability at common law") indicated "an express delegation of power to the states," and thus "the Commerce Clause does not apply." *Id*. at 1107; *see also Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008) (Court rejected the argument the Pennsylvania Dog law violated the dormant Commerce Clause because the Federal Animal Welfare Act preserved and expressly authorized states to promulgate their own standards with respect to domestic animals); *Central Valley Chrysler-Jeep*, 456 F. Supp. 2d 1160, 1184 (E.D. Cal. 2006) (California clean air regulations not barred by dormant Commerce Clause notwithstanding that they were more stringent than applicable standards under federal law because federal Act permitted the Administrator of the EPA to waive application of federal law). *Bowers v. NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D.N.J. 2001) (rejecting dormant Commerce Clause challenge because the Americans with Disabilities Act provided that "[n]othing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any…law of any State…that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter"); *L.P. Acquisition Co. v. Tyson*, 772 F.2d 201, 205 (6th Cir. 1985) (state securities statute is not violative of the Commerce Clause "because the state is regulating in an area reserved to the states by federal securities legislation"); *People ex rel State Bar Resources Bd. v. Wilmhurst*, 68 Cal. App. 4th 1332, 1345 (1999) (holding "the pre-emption waiver" in the Federal Clean Air Act "demonstrates an intent by Congress to grant California the broadest possible discretion").[5]

---

[5] In contrast to these cases, Sirius XM's reliance on *American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) is of no help to it since that case did not involve a statutory scheme in which Congress authorized states to regulate interstate activities. Moreover, because Congress authorized state protection of pre-1972 recordings, the balancing test described in *Pike v. Bruce Church*, 397 U.S. 137 (1970) is irrelevant. *See Shamrock Farms v. Veneman*, 146 F.3d 1177, 1179-80 (9th Cir. 1998). Once Congress

8

{00147561.DOCX }

Sirius XM cannot save its dormant Commerce Clause argument by mischaracterizing § 301(c) as a "savings clause." A savings clause "is generally used in a repealing act to preserve rights and claims that would otherwise be lost." *Black's Law Dictionary* at 1461 (9th ed.). Section 301(c) did not repeal anything. Section 301(c) affirmatively cedes to the states the exclusive power to provide prospective protection for pre-1972 Recordings.[6] As explained in one of the leading copyright treatises:

> General preemption is directed toward material that is…protected under the [Copyright] Act. The purpose of preemption for this material is to prevent state laws from conflicting with federal law. ***By contrast***, Section 301(c) is directed toward material (pre-1972 sound recordings) which Congress has expressly told the states that they may protect. . . .States are thus free to extend to pre-1972 sound recordings the full panoply of rights granted to original works of authorship by the Federal Copyright ***and beyond*** (***for example, a performance right for analog and digital***).

5 W.F. Patry, *Patry On Copyright*, § 18:55 at 18-198 (2010 ed.) (emphasis added).

### B. Florida's Protection of Pre-1972 Recordings Does Not "Regulate" Interstate Commerce.

Even if § 301(c) did not exist, Sirius XM's dormant Commerce Clause argument would still fail. Indeed, the grant and protection of exclusive ownership rights in pre-1972 recordings in Florida does not "regulate" commerce outside of Florida. *Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876). As Judge McMahon held, a public performance right "is not a state-imposed regulation – even when applied to public performances by a national broadcaster." F&E New York Order at 39. Therefore, Judge McMahon concluded that Sirius XM's Commerce Clause argument is "nothing more than a red herring." *Id.* at 37.

Sirius XM has not cited any case that sustained a dormant Commerce Clause challenge based upon a violation of a state-specific property right. Sirius XM's argument that the Commerce Clause prevents any state from conferring property rights that may be greater than those in other states merely because the application of those rights might have an impact on entities doing business in multiple states would effectively destroy Florida's ability to confer

---

authorizes state action, there is nothing to balance.

[6] The savings clause at issue in *New England Power Co. v. New Hampshire*, 455 U.S. 331, 341 (1982) provided that the federal regulation "shall not…deprive a State or State commission of its ***lawful authority now exercised*** over the exportation of hydroelectric energy which is transmitted across a State line." (emphasis added). Thus, by its own terms, it "did no more than leave standing whatever valid state laws existed." *Id.* That is far different from the ***prospective*** broad and unlimited grant of power to the states under § 301(c) that exists "until February 15, 2067."

intangible property rights within its borders. Thus, under Sirius XM's radical view of the dormant Commerce Clause, this Court would also have to declare as unconstitutional Fla. Stat. § 540.08 (unauthorized publication of name or likeness), Fla. Stat. § 495.131 (infringment of trademark), and Fla. Stat. § 540.11 (unauthorized copying of phonograph records, disk, wire, tape, film, or other article on which sounds are recorded). It is precisely because states are permitted to confer these property rights that Commerce Clause challenges are routinely defeated. *See A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 567-68 (1977) (no violation of Commerce Clause where conduct was "carefully circumscribed to restrain only [defendant's] activities in, or aimed at, California"); *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 2014 U.S. App. LEXIS 15395, at *12-14 (9th Cir. 2014) (Washington state laws that recognized post-mortem right of publicity not recognized in other states does not impermissibly burden interstate commerce); *Ferguson v. FriendFinders, Inc.*, 94 Cal. App. 4th 1255, 1264 (2002) (state regulation of internet advertisements does not violate commerce clause); *see also* F&Ed New York Order at 39 (compiling cases).

Finally, it really is of no consequence that Sirius XM is a national broadcaster. Compliance with Florida law is not dependent on how Sirius XM has decided to structure its business. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978) (rejecting "notion that the Commerce Clause protects the particular structure or method of operation in a retail market"); *Arrow Air, Inc. v. Port Auth. of New York and New Jersey*, 602 F. Supp. 314, 321 (S.D.N.Y. 1985) ("If a regulation is otherwise valid under the Commerce Clause it is not rendered invalid simply because an operator has to change its market structure."); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Defendant's argument – that if this court applies the Unruh Act and the Disabled Persons Acts to Target.com, the practical effect will be to force it to modify its website for all customers nationwide – is not sustainable.")[7]

---

[7] In an attempt to mislead the court, Sirius XM cites *Healy v. Beer Inst.*, 491 U.S. 324, 332 (1989) for the proposition that "a state law that has the 'practical effect' of regulating commerce…is invalid." The words that Sirius XM omitted from that quote by using ellipses are "occurring wholly outside that State's borders." Of course, even if Florida was "regulating" commerce by protecting the property rights in pre-1972 recordings (which it is not), that protection extends only to conduct within in borders – a fact trumpeted by Sirius XM in order to limit its liability for the reproduction and distribution of those recordings.

Dated: December 3, 2014

Respectfully submitted,

HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone: (305) 448-4144
Telecopier: (305) 448-4155


By:     s/Glen H. Waldman
    Glen H. Waldman, Esq.
    Fla. Bar No. 618624
    Eleanor T. Barnett, Esq.
    Fla. Bar No. 0355630
    Jason Gordon, Esq.
    Fla. Bar No. 0012973

GRADSTEIN & MARZANO, P.C.
Henry Gradstein (*admitted pro hac vice*)
Maryann R. Marzano (*admitted pro hac vice*)
Harvey Geller (*admitted pro hac vice*)
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: (323) 776-3100

Evan S. Cohen (*pro hac vice motion is being filed*)
1180 South Beverly Drive, Suite 510
Los Angeles, California
Telephone: (310) 556-9800
Telecopier: (310) 556-9801

Attorneys for FLO & EDDIE, INC.

**FLO & EDDIE, INC. v. SIRIUS XM RADIO, INC., ET AL**
**CASE NO.: 13-CV-23182-Moore/Torres**

**SERVICE LIST**

| | |
|---|---|
| Daniel M. Petrocelli<br>Robert M. Schwartz<br>Victor Jih<br>O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067-6035<br>Phone: (213) 430-6000<br>Fax: (213) 430-6407<br>Email: dpetrocelli@omm.com<br>       rschwartz@omm.com<br>       vjih@omm.com | David M. Gersten<br>Michael N. Kreitzer<br>Marty L. Steinberg<br>BILZIN SUMBERG, et al<br>1450 Brickell Ave, Suite 2300<br>Miami, FL 33131<br>Phone: (305) 374-7580<br>Fax: (305) 374-7593<br>Email: dgersten@bilzin.com<br>       mkreitzer@bilzin.com<br>       msteinberg@bilzin.com |

{00147561.DOCX }