UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23182-CIV-GAYLES/TURNOFF

FLO & EDDIE, INC.,

    Plaintiff,
v.

SIRIUS XM RADIO, INC., *et al.*,

    Defendants.
                                      /

## ORDER

**THIS CAUSE** comes before the Court upon Defendant Sirius XM Radio Inc.'s Motion for Summary Judgment on Liability and Supporting Memorandum of Law (the "Motion") [ECF No. 77, 84]. On April 28, 2015, the Court held a hearing on the Motion. The Court has reviewed the Motion, argument of counsel, and the pertinent portions of the record and is otherwise fully advised. For the reasons stated below, the Motion is GRANTED.

## BACKGROUND

In their 1967 hit "Happy Together," the Turtles famously sang, "[i]magine how the world could be, so very fine, so happy together." But more than 45 years later, that iconic rock and roll hit is not generating much happiness -- as former members of the band have filed a copyright infringement lawsuit against Sirius XM Radio for broadcasting that song (and others) without permission.

### I. The Parties

Howard Kaylan ("Kaylan") and Mark Volman ("Volman") are two of the original members of the The Turtles. In 1971, Kaylan and Volman formed Plaintiff Flo & Eddie, Inc. ("Flo & Eddie"). Flo & Eddie owns all of the rights to The Turtles' master recordings and has licensed those rights to

1

others to make and sell records and to use the recordings in movies, TV shows, and commercials. Flo & Eddie has licensed some digital uses of the recordings through The Orchard, a music distributor. The Orchard collects the rights to thousands of recordings and then licenses those recordings as a bundle. The bundles contain both pre and post-1972 recordings. Music users must purchase the entire bundle from The Orchard.

Defendant Sirius XM Radio, Inc. ("Sirius") is a satellite radio provider that operates a nationwide broadcast service. Sirius broadcasts over 135 channels of music, sports, news, talk, and other entertainment content. Sirius delivers its broadcasts via satellite radio and, with the assistance of certain third parties, by streaming over the internet.[1] Several of Sirius' channels are devoted solely to playing music recorded before 1972. Due to Sirius' licenses with the Federal Communications Commission and technological restraints on its satellite delivery systems, Sirius broadcasts identical programming to its subscribers in every state in the continental United States.

**II. The Music**

Sirius has a vast library of digital music. It stores this library on three databases: Prophet, Dalet 5.1, and Dalet Plus. The Prophet database is located in New York City and the Dalet databases are located in Washington, D.C. Sirius makes copies of its databases to create onsite back-up libraries and databases as well as offsite disaster recovery libraries and databases. The public does not have access to the copies. All of the databases contain both post and pre-1972 recordings. In addition, Sirius creates additional copies of its databases to give to third parties, including Margaritaville, located in Orlando, Florida.

---

1   "Over the past century, new radio delivery systems have been developed, and radio programming can now be transmitted by broadcast signal, cable, satellite, or over the internet." *Broadcast Music, Inc. v. Pandora Media, Inc.,* Case Nos. 13 CIV 4037 (LLS), 64 CIV 3787 (LLS), 2015 WL 3526105, at *3 (S.D.N.Y. May 28, 2015). Traditional or "terrestrial" radio is the "broadcasting of a common signal throughout a geographic area. . . referred to as the 'one-to-many' . . . model." *Id.* Satellite and internet radio are "one-to-one" models that "are able to offer music programming that is adjustable by the individual user's feedback." *Id.*

Sirius also creates "buffer copies" in Florida as part of the process by which it broadcasts music. Buffer copies are not full-length versions of the songs. As a matter of technological necessity, Sirius must make buffer copies to broadcast via satellite. In Florida, each time Sirius broadcasts a recording, it creates two buffered copies, one as a part of its terrestrial repeater system and one in the receiver of its subscriber. These buffer copies range in length from a millisecond to twenty seconds. They are discarded as new data flows into the buffer. Sirius' subscribers do not have access to the buffered copies.

Flo & Eddie has never licensed any terrestrial radio station to play The Turtles' recordings, nor has Flo & Eddie sued any of these radio stations for copyright infringement. Flo & Eddie has licensed some digital uses of the Turtles' recordings through The Orchard.

### III. Procedural History

Flo & Eddie filed this purported class action against Sirius on September 3, 2013. In its Amended Complaint [ECF No. 36], Flo & Eddie asserts claims for common law copyright infringement, unfair competition, conversion, and civil theft related to its sound recordings. Flo & Eddie asserts Sirius violates its property rights in the sound recordings by (1) publicly performing the recordings and (2) reproducing the recordings via the back-up and buffer copies. Flo & Eddie filed nearly identical class actions in California, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, CV-13-05693 (PSG) (the "California Litigation") and New York, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 13-CIV-5784 (CM) (the "New York Litigation").

Sirius now moves for summary judgment arguing primarily that Flo & Eddie has no public performance rights in The Turtles' pre-1972 sound recordings and that its back-up and buffer copies do not violate any of Flo & Eddie's rights. Both the California and New York district courts have already addressed Flo & Eddie's claims on motions for summary judgment. Each found that

copyright ownership, under California and New York law respectively, includes the right to publicly perform a sound recording. The Second Circuit Court of Appeals has granted Sirius' petition for leave to appeal the district court's rulings in the New York Litigation.

## ANALYSIS

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## I.     Copyright Protection for Sound Recordings

This action is about *sound recordings* as opposed to *musical compositions*. "The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition." *Hermosila v. The Coca-Cola Company*, No. 11-11317, 2011 WL 5248149, at *1 (S.D. Fla. Nov. 3, 2011)(quoting *Saregama India Ltd. v. Mosley,* 635 F.3d 1284, 1289 n. 18 (11th Cir. 2011)). Like plays and novels, federal copyright law has protected musical compositions since 1831. *Capitol Records, Inc. v. Naxos of America, Inc.*, 830 N.E. 2d 250, 258 (N.Y. 2005). Under the Federal Copyright Act of 1909 (the "1909 Act"), common law copyright only lasted through the publication of the composition. *See Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211, 1214 (11th Cir. 1999). The owner of the work could, at that time, convert the common law copyright into a federal statutory copyright. However, if the owner failed to follow federal statutory requirements after publication, all copyright protection extinguished. *Id. See also DeSilva Const. Corp. v. Herald,* 213 F.Supp. 184, 194 (M.D. Fla. 1962)("common law copyrights are lost through publication; and if the right of the author is not preserved promptly by a proper compliance with the statute whereby the statutory copyright is secured, all rights are lost through publication.")

Flo & Eddie, however, is not seeking damages for Sirius' use of The Turtles' musical compositions. Rather, Flo & Eddie is seeking damages for Sirius' copying, distribution, and public performance of The Turtles' sound recordings. The 1909 Act protected musical compositions, s*ee Goldstein v. California*, 412 U.S. 546, 564 (1973), but did not encompass sound recordings. Congress, however, provided that the 1909 Act "shall [not] be construed to annul or limit the right of

the author or proprietor of an unpublished work, at common law, or in equity, to prevent the copying, publication or use of such unpublished work without his consent, and to obtain damages therefor." 17 U.S.C. § 2. As a result, Congress confirmed "that, although sound recordings were not protected under federal law, there was nothing to prevent the states from guaranteeing copyright protection under common law." *Naxos*, 830 N.E. 2d at 258.

In 1971, Congress amended the Act to include "sound recordings" within the category of works entitled to federal copyright protection. Sound Recording Act of 1971, Pub. L. 92-140, 85 Stat 391. However, this protection only applies to recordings created after February 15, 1972. The Act will not encompass pre-1972 recordings until February 15, 2047. As a result, the states may regulate pre-1972 sound recordings, either via state statute or the common law.

The Turtles created all of the sound recordings at issue before 1972, therefore, the Court must determine the extent to which Florida law protects Flo & Eddie's rights in those recordings. Flo & Eddie contends that its rights include the exclusive right to (a) publicly perform the recordings and (b) reproduce the recordings. Sirius claims that Florida property rights in sound recordings do not include the exclusive right to public performance and that its back-up and buffered copies do not constitute an unlawful reproduction. It is undisputed that Florida statutes do not directly address these issues. Accordingly, the Court must look to Florida common law to determine the breadth of Flo & Eddie's property rights.

**II.     Copyright Infringement**

Sirius does not dispute that Flo & Eddie has some property interest in the sound recordings. Rather, Sirius argues that Flo & Eddie's interest does not include the exclusive right of public performance because (a) Florida's common law protection for sound recordings does not extend to

public performance and (b) Flo & Eddie lost any common law copyright protection under Florida law after The Turtles first published the sound recordings over forty years ago.

### A.     Public Performance

At the onset of this litigation, Flo & Eddie recognized that its property rights were a matter of state law and therefore filed three different actions in Florida, New York, and California.[2] Of the three actions, this one is relatively unique. California's copyright statute has a specific provision – Cal. Civ. Code § 980(a)(2) – that addresses pre-1972 recordings. In its ruling, the California district court was able to rely on § 980(a)(2), the legislative history behind that provision, and case law interpreting § 980(a)(2) to find an exclusive right of public performance under California law. *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693 PSG, 2014 WL 4725382, at * 4-9 (C.D. Cal. Sept. 22, 2014). The New York district court did not have the benefit of legislation, however, it was able to rely on several cases interpreting New York law to find that Flo & Eddie had an exclusive right to publicly perform the sound recordings.[3]

Indeed, it makes sense that California and New York have statutes and well-developed case law regarding the arts and related property rights. It is common knowledge that California and New York are the creative centers of the Nation's art world. Book publishing, film, television, theater, fashion, and the music industry are all major industries within those states. In the New York Litigation, the district court was able to rely on several cases where New York common law protected public performance rights. *See e.g. Palmer v. DeWitt,* 47 N.Y. 532, 535-36, 540-41 (1872)(public performance rights for plays); *Roberts v. Petrova*, 126 Misc. 86, 213 N.Y.S. 434, 434-

---

[2]     Sirius moved to transfer this action and the California Litigation to New York. Both this Court and the California court denied the motion. *See* [ECF No. 50].

[3]     Although ruling in favor of Flo & Eddie, the New York District Court recognized that these cases involve "a difficult legal question about which reasonable minds can differ." *Flo & Eddie v. Sirius*, No. 13civ5784, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015).

37 (Sup.Ct. 1925)(same); *French v. Maguire*, 55 How.Pr. 471, 472-73, 479-80, 1878 WL 11310 (N.Y.Sup.Ct. 1978)(same); *Brandon Films, Inc. v. Arjay Enter., Inc.,* 33 Misc.2d 794, 230 N.Y.S.2d 56, 57-58 (Sup.Ct. 1962)(public performance rights for films); *Roy Exp. Co. v. Columbia Broad Sys., Inc.,* 672 F.2d 1095, 1097-99, 1101-04 (2d Cir. 1982)(applying New York law to find public performance right for film clips).  In the California Litigation, the district court relied on the California legislature's guidance on pre-1972 sound recordings.  *See Flo & Eddie*, 2014 WL 4725382 at * 4.

Florida is different.  There is no specific Florida legislation covering sound recording property rights, nor is there a bevy of case law interpreting common law copyright related to the arts. In arguing its position, Flo & Eddie can only point to New York common law and one district court case arising out of the Middle District of Florida – which also relied extensively on New York law. *See CBS, Inc. v. Garrod*, 622 F.Supp. 532, 534-35 (M.D. Fla. 1985).  In short, neither Florida legislation nor Florida case law answers the question of whether Florida common law copyright includes an exclusive right of public performance.[4]

Flo & Eddie asserts that Florida broadly defines property, and therefore, Florida common law copyright *must* encompass an exclusive right of public performance.  Flo & Eddie requests an unqualified property right wherein it would control everything related to the performance of the sound recordings, including setting and receiving all royalty rates.  Owners of post-1972 sound recordings do not have this unfettered right.  Indeed, "[c]opyright protection has never accorded the copyright owner complete control over all possible uses of his work." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984).

---

4    Florida Statute §540.11, governing the unauthorized copying of sound recordings, is the only time the Florida legislature specifically addressed ownership rights in sound recordings and specifically excludes broadcast radio. Fla.Stat. §540.11(6)(a) ("This section does not apply . . . [t]o any broadcaster who, in connection with, or as part of a radio, television, or cable broadcast transmission, or for the purpose of archival preservation, transfers any

If this Court adopts Flo & Eddie's position, it would be creating a new property right in Florida as opposed to interpreting the law. The Court declines to do so. "While the Court regularly interprets Florida law to resolve claims in diversity jurisdiction, it is not the Court's place to expand Florida common law by creating new causes of action. Federal courts are entrusted to apply state law, not make it." *Zombori v. Digital Equipment Corp.*, 878 F.Supp.207, 209-210 (N.D. Fla. 1995) (refusing to expand the common law to include retaliatory discharge based on prima facie common law tort despite other jurisdictions recognizing the tort). The Court finds that the issue of whether copyright protection for pre-1972 recordings should include the exclusive right to public performance is for the Florida legislature.

Indeed, if this Court was to recognize and create this broad right in Florida, the music industry – including performers, copyright owners, and broadcasters -- would be faced with many unanswered questions and difficult regulatory issues including: (1) who sets and administers the licensing rates; (2) who owns a sound recording when the owner or artist is dead or the record company is out of business; and (3) what, if any, are the exceptions to the public performance right. The Florida legislature is in the best position to address these issues, not the Court. *See Sony*, 464 U.S. at 431 ("The judiciary's reluctance to expand the protections afforded by the copyright without explicit legislative guidance is a recurring theme . . . Sound policy, as well as history, supports our consistent deference to Congress when major technological innovations alter the market for copyrighted materials. Congress has the constitutional authority and institutional ability to accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology."); *Steiner v. Guardianship of S. Steiner*, 159 So.3d 253, 256-57 (Fla. 2d DCA 2015)("While we and our sister courts are troubled by the statutory gap . . . it is not within the

---

such sounds recorded on a sound recording.").

judiciary's power to remedy the problem."); *Cannon v. Thomas*, 133 So.3d 634, 638 (Fla. 1st DCA 2014)(holding "under our constitutional system of government . . . courts cannot legislate.")(quoting *State v. Egan,* 287 So. 2d 1, 7 (1973)).  Accordingly, the Court finds that Florida common law does not provide Flo & Eddie with an exclusive right of public performance in The Turtles' sound recordings.

### B.    Reproduction

Flo & Eddie also argues that the back-up and buffer copies are unlawful reproductions under Florida common law copyright.  Sirius argues that (a) the back-up and buffer copies are never distributed to the public and wouldn't qualify as an unlawful reproduction and (b) upon first publication, Flo & Eddie's copyright protection in the sound recordings ended.

The Court finds that Sirius' buffer and back-up copies do not constitute an improper reproduction.  Unlike a complete or significant portion of a compact disc or record, none of the buffer or back-up copies are maintained by Sirius or accessible to the public.  They are discarded immediately after use.   In addition, the buffer copies are not full length copies of the recording. The few seconds of a buffer copy – created to aid in the transmission of the recording – do not constitute an unlawful reproduction.  *See Cartoon Network, LP v. CSC Holdings, Inc.*, 536 F.3d 121, 127-30 (2d Cir. 2008) (holding that the acts of buffering did not constitute copies sufficient to constitute copyright infringement); *Authors Guild v. Hathi Trust*, 755 F.3d 87, 97-99 (2d Cir. 2014) (buffered copies did not constitute copyright infringement).  Because the Court finds that the back-up and buffer copies are not unlawful reproductions, it refrains from addressing Sirius' argument regarding publication.

### C. Commerce Clause

As detailed above, the Court finds that Flo & Eddie's common law copyright in the sound recordings does not include an exclusive right to public performance, therefore Sirius' argument regarding the dormant commerce clause is moot. The Court notes, however, that state regulation of pre-1972 recordings would not impermissibly regulate extraterritorial conduct in violation of the Dormant Commerce clause. In enacting 17 U.S.C. § 301(c), Congress specifically authorized the states to regulate pre-1972 sound recordings. "Any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067." 17 U.S.C. § 301(c). Where Congress specifically authorizes state action, the dormant commerce clause does not apply. "Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Mass. Council of Const. Employers, Inc.,* 460 U.S. 204, 213 (1983). Therefore, the Dormant Commerce Clause would not prevent the Florida legislature from expanding copyright protection for pre-1972 recordings.

## III. REMAINING CLAIMS

Flo & Eddie's remaining claims for unfair competition, conversion, and civil theft are all based on its alleged common law copyright. Because the Court finds that Sirius has not infringed on any of Flo & Eddie's copyrights, these claims are without merit.

## **CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant Sirius XM Radio, Inc.'s Motion for Summary Judgment on Liability and Supporting Memorandum of Law (the "Motion") [ECF No. 77, 84] is **GRANTED.** Summary Judgment is entered in favor of Sirius XM Radio, Inc. A final judgment will be entered separately. It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** for administrative purposes and all pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of June, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record